Sandhya–Rani MOKKALA, M.D., Jeffrey D. Carter, D.O., and Arlington Orthopedic Associates, P.A., Appellants,

v.

James F. MEAD, Jr., and Diane P. Mead, Individually and As Next Friends of James Franklin Mead, III, Robert Mead, and Thomas Mead, Minors, Appellees.

Sandhya–Rani Mokkala, M.D., Appellant,

v.

James F. Mead, Jr., and Diane P. Mead, Individually and As Next Friends of James Franklin Mead, III, Robert Mead, and Thomas Mead, Minors, Appellees.

Nos. 14–04–00708–CV, 14–04–00845–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 2, 2005.

Rehearing Overruled Sept. 8, 2005.

Rehearing En Banc Overruled Nov. 3, 2005.

Mary Olga Lovett, Christopher Cord Miller, Wendi R. Ervin, Houston, for appellants.

Lori D. Proctor, Tommy Ray Hastings, Houston, for appellees.

Panel consists of Justices EDELMAN, SEYMORE, and GUZMAN.

## MAJORITY OPINION

EVA M. GUZMAN, Justice.

In these consolidated interlocutory appeals, we are called upon to construe section 74.351(a) and (b) of the Texas Civil Practice and Remedies Code, which pertains to the filing of expert reports for health care liability claims.[1] Appellants, healthcare providers, challenge the trial court's orders denying their motions to dismiss with prejudice their health care liability claims under section 74.351, which provides in relevant part:

> (a) In a health care liability claim, a claimant shall, not later than the 120th day after the date the claim was filed, serve on each party or the party's attor-

1. In 2003, the Texas Legislature repealed article 4590i of the Revised Civil Statutes and moved substantially amended provisions of former article 4590i to Chapter 74 of the Civil Practice & Remedies Code. See Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 10.01, 10.09, 2003 Tex. Gen. Laws 847, 864–82, 884.

This legislation also added the interlocutory appeal statute that provides appellate jurisdiction in the present case. See id. § 1.03, 2003 Tex. Gen. Laws 847, 849 (codified at Tex. Civ. Prac. & Rem.Code § 51.014(a)(9) (Vernon Supp.2004–05)).

ney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted. The date for serving the report may be extended by written agreement of the affected parties. . . .

(b) If, as to a defendant physician or health care provider, an expert report has not been served within the period specified by Subsection (a), the court, on the motion of the affected physician or health care provider, shall, subject to Subsection (c), enter an order that:

(1) awards to the affected physician or health care provider reasonable attorney's fees and costs of court incurred by the physician or health care provider; and

(2) dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a)(b) (Vernon 2005).

Here, it is undisputed that appellees ("the Meads") served their expert report and expert's curriculum vitae 121 and 122 days, respectively, after filing their original petition against appellants, Sandhya–Rani Mokkala, M.D., Jeffrey D. Carter, D.O., and Arlington Orthopedic Associates, P.A. (the "health care providers") and others, in trial court cause number 03–64427

(the "2003 case").[2] After twice nonsuiting their claims against the health care providers in the 2003 case, the Meads then filed the same claims against the health care providers in cause number 04–23671 (the "2004 case"). We conclude the 120–day period set forth in section 74.351(a) runs from the date the Meads filed the first petition asserting their health care liability claim, a period which, in this case, had expired before the Meads nonsuited their claims against the health care providers.[3] Therefore, we hold the trial court erred in denying the health care providers' motions to dismiss. Accordingly, in the 2004 case, we reverse and remand with directions to the trial court to award the health care providers their reasonable attorney's fees and costs of court and to render judgment dismissing the Meads' claims with prejudice. *See id.* Presuming for the sake of argument that we would otherwise have appellate jurisdiction over Dr. Mokkala's appeal regarding the 2003 case, we dismiss this appeal as moot because the Meads nonsuited their claims in the 2003 case before the trial court denied Dr. Mokkala's motion to dismiss.[4]

**I. PROCEDURAL BACKGROUND**

In summary form, the following procedural events transpired in the two underlying trial court cases:

| Date | 2003 Case | 2004 Case |
|---|---|---|
| 11-24-03 | The Meads file a petition claiming the health care providers were negligent in | |

**2.** The Meads named several other defendants who are not parties to this interlocutory appeal.

**3.** Thus, the 120–day period expired before the Meads nonsuited their claims against the health care providers. We therefore need not decide whether filing of a nonsuit before the expiration of the 120–day period would toll the 120 days for the period that elapses between the filing of the nonsuit and the refiling of the same health care liability claim.

**4.** *See McNeill v. Hubert,* 119 Tex. 18, 22, 23 S.W.2d 331, 332–33 (Tex.1930) (indicating plaintiff's nonsuit of his claim, when defendant had not filed a claim for affirmative relief, necessarily rendered any questions involved in appeal moot, because there was nothing upon which the judgment of the appellate court could effectively operate).

| Date | | |
|---|---|---|
| | failing to diagnose cancer in appellee James Mead, Jr. | |
| 03-24-04 | The Meads serve their expert report. | |
| 03-25-04 | The Meads serve the expert's curriculum vitae. | |
| 04-02-04 | The Meads file a motion to nonsuit the claims against the health care providers. | |
| 04-07-04 | The trial court grants the motion to nonsuit. | |
| 04-12-04 | The Meads amend their petition, again naming the health care providers as defendants. | |
| 04-16-04 | Dr. Mokkala files a motion to dismiss based on the Meads' untimely serving of the expert's report and curriculum vitae. | |
| 05-03-04 | The trial court again grants a motion by the Meads to nonsuit their claims against the health care providers.[5] | |
| 05-06-04 | | The Meads file a petition claiming appellants were negligent in failing to diagnose cancer in appellee James Mead, Jr. |
| 06-07-04 | | Based on the Meads' alleged untimely serving and inadequacy of the expert's report, Dr. Carter files a motion to dismiss and requests attorney's fees.[6] |
| 06-11-04 | The trial court orally denies Dr. Mokkala's motion to dismiss. | |
| 06-30-04 | The trial court signs an order denying Dr. Mokkala's motion to dismiss, but the order is filed with the 2004 cause number. | |
| 07-06-04 | | Based on the Meads' untimely serving of the expert's report and curriculum vitae, Dr. Mokkala files a motion to dismiss and requests attorney's fees. |
| 07-19-04 | The trial court signs orders denying motions to dismiss in both cases. | |
| 07-22-04 | Dr. Mokkala files a notice of appeal. | Dr. Mokkala files a notice of appeal. |
| 08-06-04 | | Dr. Carter and Arlington Orthopedic Associates file a notice of appeal. |

## II. Discussion

### A. Issue Presented and Standard of Review

In a single issue, the health care providers argue the trial court abused its discretion or otherwise erred in denying their motions to dismiss the Meads' claims with prejudice because the Meads failed to timely serve their expert report and the expert's curriculum vitae. They argue

---

5. This motion is not part of the appellate record.

6. There is no indication in the appellate record of whether or when the Meads served the expert's report and curriculum vitae in the 2004 case.

that the 120–day time period under Section 74.351(a) began when the Meads filed their "claim" in the 2003 case, and it was not affected by their nonsuit in that case or their refiling of the same claims in the 2004 case.

The Meads contend they have an absolute right to nonsuit under Texas Civil Procedure Rule 162 and, under the current statutes and case law, the health care providers were required to move for dismissal before the Meads filed their nonsuit. The Meads assert that by nonsuiting their claims, they were then placed in the same position they would have been had they not brought the 2003 case, *i.e.*, the deadline for serving their expert report was 120 days from the date they filed the 2004 lawsuit.

■ We apply an abuse-of-discretion standard in reviewing a trial court's decision on a motion to dismiss in which a defendant claims the expert opinion was untimely served. *See Pfeiffer v. Jacobs*, 29 S.W.3d 193, 195–96 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (applying abuse-of-discretion standard to dismissal under sections 13.01(d)(g) of former article 4590i).[7] An abuse of discretion occurs when a trial court acts in an unreasonable and arbitrary manner, or when it acts without reference to any guiding principles. *Rittmer v. Garza*, 65 S.W.3d 718, 721–22 (Tex.App.-Houston [14th Dist.] 2001, no pet.). We defer to the trial court's factual determinations, but review questions of law de novo. *Id.* at 722. To the extent resolution of the issue before the trial court requires interpretation of the statute itself, we apply a de novo standard. *Buck v. Blum*, 130 S.W.3d 285, 290

(Tex.App.-Houston [14th Dist.] 2004, no pet.).

## B. Interpretation of Texas Civil Practice and Remedies Code Section 74.351

In this case, the Meads (1) filed a lawsuit alleging a health care liability claim against health care providers and permitted the 120–day period for serving an expert report to expire without serving the health care providers with the report; (2) thereafter nonsuited the claim before, and again after, the health care providers filed a motion to dismiss under subsection 74.351(b); and (3) then filed a new lawsuit alleging the same health care liability claim. Thus, the following question is before us: Under these circumstances, does the 120–day statutory period for filing the expert report run from the date the second lawsuit is filed? This question requires us to construe the statute.

*1. Legal standards.* In construing a statute, our objective is to determine and give effect to the legislature's intent. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex.2003); *Nabors Corp. Servs., Inc. v. Northfield Ins. Co.*, 132 S.W.3d 90, 96 (Tex.App.-Houston [14th Dist.] 2004, no pet.). We look first to the "plain and common meaning of the statute's words," presuming the legislature intended the plain meaning of those words. *Nabors Corp. Servs.*, 132 S.W.3d at 96. We also determine legislative intent from the entire act, not just isolated portions, and read the statute as a whole, interpreting it so that every part is given effect. *Id.*

In addition, the Code Construction Act applies to section 74.351. *See* TEX. CIV.

---

7. *See* Act of May 25, 1993, 73rd Leg., R.S., ch. 625, § 3, 1993 Tex. Gen. Laws 2347, 234749, *amended by* Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985, 985–87, *repealed by* Act of June 2, 2003, 78th Leg., R.S. ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884.

PRAC. & REM.CODE ANN. 1.002 (Vernon 2002) (stating, unless otherwise expressly provided by the Civil Practice and Remedies Code, the Code Construction Act applies to the construction of each provision in the code). Under the Code Construction Act, even if a statute is unambiguous on its face, we may consider matters including (1) the object the legislature sought to obtain; (2) the circumstances under which the legislature enacted the statute; (3) the legislative history; (4) common law or former statutory provisions, including laws on the same or similar subjects; and (5) the consequences of a particular construction. *See* TEX. GOV'T CODE ANN. § 311.023 (Vernon 2005).

■ *2. Statutory language.* Section 74.351(a) provides: "In a health care liability claim, a claimant shall, not later than the 120th day after the date *the claim* was filed, serve ... one or more expert reports ... for each physician or health care provider against whom *a liability claim* is asserted." TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (emphasis added). "Claim" in section 74.351 "means a health care liability claim." *Id.* § 74.351(r)(2). A "health care liability claim" is a "cause of action," not a lawsuit. *See id.* § 74.001(a)(13).[8] Thus, under the plain language of section

74.351(a), the 120–day period is triggered on the date the claimant files a petition alleging a particular health care liability claim, not the date she files another lawsuit asserting that same claim.

Our interpretation is consistent with that of the Dallas Court of Appeals in *Puls v. Columbia Hospital at Medical City Dallas Subsidiary, L.P.*, 92 S.W.3d 613, 617–18 (Tex.App.-Dallas 2002, pet. denied).[9] In *Puls*, the appellants initially asserted a claim against a hospital, Medical City, based on its vicarious liability for the alleged negligence of perfusionists (technicians specialized in management of a heart-lung machine) during the decedent's coronary artery bypass surgery. *Id.* at 615. The appellants subsequently amended their petition to assert the hospital's vicarious liability for the alleged negligent conduct of nurses providing post-operative care.

The expert report criticizing the nurses' conduct was served within the statutory deadline of the amended petition, but not the original petition. On appeal, the court rejected Medical City's contention the deadline was to be measured from the date the claimants filed their original suit against Medical City, in which they alleged the hospital's liability based on the perfu-

---

8. Section 74.001(a)(13) provides:
   "Health care liability claim" means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.
   TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(13) (Vernon 2005).

9. The *Puls* court was construing former article 4590i. *See Puls v. Columbia Hosp. at Med. City Dallas Subsidiary, L.P.*, 92 S.W.3d 613,

617–18 (Tex.App.-Dallas 2002, pet. denied). Nevertheless, the specific language the *Puls* court was interpreting and the definition of "health care liability claim" on which it relied are in all material respects identical to those found in the present statute. *See* Act of May 5, 1995, 74th Leg., R.S., ch. 140, 1, 1995 Tex. Gen. Laws 985, 986 (setting forth expert-report procedure), *repealed by* Act of June 2, 2003, 78th Leg., R.S. ch. 204, 10.09, 2003 Tex. Gen. Laws 847, 884; Act of May 30, 1977, 65th Leg., R.S, ch. 817, 1.03(a)(4), 1977 Tex. Gen. Laws 2039, 2041 (defining "health care liability claim"), *repealed by* Act of June 2, 2003, 78th Leg., R.S. ch. 204, 10.09, 2003 Tex. Gen. Laws 847, 884.

sionists' conduct. The *Puls* court explained:

Here, appellants' lawsuit against Medical City was initiated with a single health care liability claim asserted in the original petition filed August 8, 2000. That claim alleged that Medical City was vicariously liable for the perfusionists' actions during surgery. Section 13.01(d) states that an expert report is due "[n]ot later than the later of the 180th day after the date on which a *health care liability claim* is filed...." TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(d) (emphasis added). Pursuant to section 13.01(d), an expert report regarding the standard of care applicable to a perfusionist's acts during surgery was due 180 days after that claim was filed.

Medical City's interpretation of the above phrase would require a plaintiff to furnish an expert report 180 days after *suit* is filed, but section 13.01(d) plainly and unambiguously says *claim,* not *suit.* A health care liability claim is "a cause of action against a health care provider ... for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety." *Id.* § 1.03(a)(4). That is, it is a theory of a health care provider's liability. Here, appellants pleaded two claims, alleging that Medical City was vicariously liable for the perfusionists' conduct during surgery and for the nurses' post-operative actions. Section 13.01(d) requires experts' opinions as to the standards of care applicable to each claim.... By amending its petition on May 15, 2001, appellants alleged, for the first time, a health care liability claim against Medical City for vicarious liability arising from the nurses' alleged post-operative actions. According to the plain meaning of section 13.01(d), filing a claim arising from the nurses' negligence began the period for timely furnishing an expert report as to that claim. Nothing in the statute distinguishes between claims for direct and vicarious liability. Thus, the amendment of a petition to add a new claim constitutes filing of that claim pursuant to section 13.01(d) and triggers the expert report deadline as to any defendant sued in either a direct or vicarious capacity.

*Id.* at 617–18. Furthermore, if the legislature had intended to set the 120–day time limit in relation to the date a claimant files a lawsuit, it could have done so, as it did in section 74.051, which provides:

Any person ... asserting a health care liability claim shall give written notice of such claim ... to each physician or health care provider against whom such claim is being made *at least 60 days before the filing of a suit* in any court of this state based upon a health care liability claim.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.051(a) (Vernon 2005) (emphasis added).

**3. Purported conflict with Texas Civil Procedure Rule 162.** The Meads, however, contend they had an absolute right to nonsuit their claims under Rule 162, and that the health care providers were required to move for dismissal before the Meads filed their nonsuit. Having nonsuited their claims, the Meads assert they effectively occupied the same position had they not brought the 2003 case; that is, their deadline for serving their expert report was 120 days from the date they filed the 2004 case.

Rule 162 provides in relevant part: "At any time before the plaintiff has introduced all of his evidence other than rebuttal evidence, the plaintiff may dismiss a case, or take a non-suit, which shall be entered in the minutes." TEX.R. CIV. P. 162. A plaintiff's right to take a nonsuit is

unqualified and absolute so long as the defendant has not made a claim for affirmative relief or a motion for sanctions. *BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 840 (Tex.1990). Nothing in our interpretation of Civil Practice and Remedies Code section 74.351 interferes with a plaintiff's right to take a nonsuit.[10]

Although under our interpretation of section 74.351(a) the plaintiff is arguably not placed in the "same position" she was before she brought the action, at least not in relation to the amount of time she has to serve the section 74.351 expert report, our interpretation does not conflict with the purpose of Rule 162.[11] *See Alvarado v. Hyundai Motor Co.*, 885 S.W.2d 167, 170 (Tex.App.-San Antonio 1994) (noting Rule 162 is designed to allow a plaintiff to avoid unexpected emergencies, citing 5 ROY W. MCDONALD, TEXAS CIVIL PRACTICE § 27:39 (John S. Covell ed., 1992)), *rev'd on other grounds*, 892 S.W.2d 853 (Tex.1995); *see also Hoodless v. Winter*, 80 Tex. 638, 641, 16 S.W. 427, 428 (1891) ("Owing to unexpected contingencies that may occur during a trial, [a plaintiff's right to take a nonsuit] is a privilege which it may become necessary for the most careful and diligent litigant to exercise, and it is important that the substance, and not the shadow alone, of the right shall be preserved."). The

plaintiff controls when she files a petition alleging a health care liability claim, thereby triggering the commencement of the 120-period within which she must serve the expert report. Subject only to the statute of limitations, a plaintiff can therefore wait to file a petition until she has obtained, and can serve, the expert report. Thus, our holding that refiling a previously nonsuited health care liability claim fails to restart the 120-day period, does not conflict with the purpose of Rule 162, *i.e.*, allowing a means to discontinue the suit in the event of unexpected contingencies.

Moreover, even if there were a conflict between section 74.351(a) and Rule 162, the legislature has determined section 74.351(a) prevails: "In the event of a conflict between this chapter and another law, including a rule of procedure or evidence or court rule, this chapter controls to the extent of the conflict." TEX. CIV. PRAC. & REM.CODE ANN. § 74.002(a) (Vernon 2005). As Justice Owen has observed, it was the legislature's "clear determination that law that applies in other lawsuits is inadequate in some respects for health care liability claims." *In re Woman's Hosp. of Tex., Inc.*, 141 S.W.3d 144, 147 (Tex.2004) (Owen, J., dissenting).

**10.** Thus, contrary to the dissent's suggestion, we do not conclude "the legislature intended to preclude litigants from exercising the right to file a non-suit without prejudice as prescribed by Rule 162 when it enacted House Bill 4." Op. at 4, 178 S.W.3d at 78 (Seymore, J., dissenting). A plaintiff still has, pursuant to the exceptions set forth in Rule 162, an absolute right to a nonsuit. *See* TEX.R. CIV. P. 162.

We note, however, that the legislature removed provisions of the prior statute permitting a plaintiff to nonsuit an action if the plaintiff failed to furnish an expert report within the required time. *See* Act of May 5, 1995, 74th Leg., R.S., ch. 140, 1, sec. 13.01(d)(2), (n), 1995 Tex. Gen. Laws 985,

986, 987 (repealed 2003). *Cf.* TEX. CIV. PRAC. & REM.CODE ANN. 74.351 (Vernon 2005). We do, therefore, conclude the legislature intended that a nonsuit would not provide plaintiffs with a new 120-day period within which to file their expert report. In short, like the expiration of a limitations period, expiration of the 120-day period for filing an expert report cannot be cancelled by a nonsuit.

**11.** *Cf. Crofts v. Court of Civil Appeals*, 362 S.W.2d 101, 104 (Tex.1962) (stating dismissal is in no way an adjudication of rights of the parties, but merely places parties in position they were in before court's jurisdiction was invoked just as if suit had never been brought).

**4. Legislative background of section 74.351.** To interpret section 74.351 as permitting the 120–day period to recommence on the refiling of a previously nonsuited claim would not only be inconsistent with the plain language of the statute, but also with the circumstances under which the legislature enacted the statute, the object the legislature sought to obtain, and the legislative history of chapter 74 of the Civil Practices and Remedies Code.

In enacting chapter 74, the legislature was concerned with the frequency and costs of health care liability claims. Act of June 2, 2003, 78th Leg., R.S. ch. 204, § 10.11(a), 2003 Tex. Gen. Laws 847, 884.[12] Two purposes of chapter 74 are to: "(1) reduce excessive frequency and severity of health care liability claims through reasonable improvements and modifications in the Texas insurance, tort, and medical practice systems;" and "(2) decrease the cost of those claims and ensure that awards are rationally related to actual damages." *Id.* § 10.11(b). In presenting House Bill 4, Representative Joe Nixon, Chair of the House Committee on Civil Practices explained:

> House Bill 4 . . . is a comprehensive civil justice reform bill intended to address and correct a serious problems [sic] in our courts system. It is designed to promote fairness and efficiency in civil lawsuits, protect Texas citizens and Texas courts from abusive litigation tactics, remove incentives in the system that are causing unwarranted delay and expense. House Bill 4—it's purpose is to restore the needed balance in our court system so that it can operate more efficiently and more fairly and less costly.

*Hearings on Tex. H.B. 4 Before the House Comm. on Civil Practices,* 78th Leg., R.S. 1 (Feb. 26, 2003) (statement of Rep. Nixon) (transcript available from Capitol Research Services, Austin, Texas). Representative Nixon subsequently stated, "[T]he hard reality is we just need to make a hard and fast deadline, like we do on statue [sic] of limitations—as we do on other requirements." Debate on Tex. H.B. 4 on the Floor of the House, 78th Leg., R.S. 317 (Mar. 19, 2003) (statement of Rep. Nixon) (transcript available from Capitol Research Services, Austin, Texas). He agreed that, if House Bill 4 were passed, it meant that, if an attorney missed the deadline for "filing [sic]" the expert report, the plaintiff would be barred from prosecuting that claim. *Id.*

Although he had other objections to the expert-report provisions in House Bill 4, attorney Jim M. Perdue, Jr., explained the advantages of a firm expert-report deadline to the Senate State Affairs Committee:

> It seems to me that one of the primary ways to deal with an issue of increased filings of frivolous lawsuits and the defense costs that those create would be to get nonmeritorious cases out of the system as early as possible and as easy as possible. . . . The expert report section . . . of 4590i is something that can be dealt with and should be dealt with to accelerate the disposition of a nonmeritorious case. And as a plaintiff's lawyer that screens and takes one out of about 250 cases that come to our firm, if we could figure out a way to get out of the system a case that is decided by the

---

**12.** The legislature specifically found: "(1) the number of health care liability claims (frequency) has increased since 1995 inordinately;" and "(2) the filing of legitimate health care liability claims in Texas is a contributing factor affecting medical professional liability rates." Act of June 2, 2003, 78th Leg., R.S. ch. 204, 10.11(a), 2003 Tex. Gen. Laws 847, 884.

judge to not have expert support within the first 180 days it's on file, those defense costs will now, not be incurred. The heartache and expense of doctors who have been sued that cannot be supported will not be suffered.

. . .

On the increased number of cases that are being dismissed within the first 180 days because of the failure of an expert report. If there was a way to make the 180–day requirement firm, solid and clear and the expert report requirement then on file, and not allow venue shopping where you have judges who arent' [sic] dismissing it, that is something that will stick. I, I will suggest to the Committee that when the 2002 data comes out you're going to see that, an increased number of medical malpractice cases have been successfully dismissed and, and those defense costs now have not been incurred and that nonmeritorious case, that is an expert cannot support the case, you get the case out of the system. That is a valid goal that is a way to achieve a real result on the front end. . . . I think it's dangerous to take out the attorney's ability to extend it, especially if you're gonna make it a firm

90–day, nonnegotiable, dismiss with an interlocutory appeal that is set up such that the defense lawyer can hide all discovery, or stop all discovery and you cannot go forward. What I think the more reasonable approach would be is, have an ex–an absolute expert report requirement within 180 days. Have a mean [sic] for attorneys to extend that if necessary.

*Hearings on Tex. H.B. 4 Before the Senate State Affairs Comm.*, 78 Leg., R.S. 1920 (April 16, 2003, tape 2) (statement of Jim M. Perdue, Jr.) (transcript available from Senate Staff Services Office).[13]

Against this backdrop, in enacting section 74.351, the legislature made significant changes to the former expert-report procedure for health care liability claims. The legislature removed the provisions allowing a cost bond or cash deposit in lieu of an expert report served 90 days after a plaintiff filed a health care liability claim and removed the provisions permitting a nonsuit if an expert report was not filed 180 days after the plaintiff filed the claim. *See* Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(a), (d), 1995 Tex. Gen. Laws 985, 985, 986 (repealed 2003). *Cf.* Tex. Civ. Prac. & Rem.Code Ann. § 74.351 (Vernon 2005).[14] The legislature also re-

**13.** The senate committee version of House Bill 4 reflected some of the concerns expressed by those who had testified before the Senate State Affairs Committee. In contrast to House Bill 4, which set a 90–day deadline for the report, the senate committee version set a 150–day deadline. *See* Conference Committee Report on H.B. 4, Section by Section Analysis, 78th Leg., R.S. 209[79]. Unlike House Bill 4, the senate committee version permitted the affected parties to extend the deadline and required objections to the sufficiency of the report to be filed within 21 days of service of the report. *Id.* at 210[80]. The senate version also allowed more deposition discovery before the expert report is served. *Id.* at 215[85].

**14.** In support of its position that a health care liability claimant who files a non-suit without prejudice should be returned to status quo ante without prejudice to initiating another suit, the dissent cites *Martinez v. Lakshmikanth*, 1 S.W.3d 144 (Tex.App.-Corpus Christi 1999, pet. denied). Op. at 4, 178 S.W.3d at 78 (Seymore, J., dissenting). In *Martinez*, the court rejected the health care providers' argument that provisions in the predecessor statute expressly limited a plaintiff's right to non-suit and " '13.01(d)(2) limit[ed] the right by preventing a post–180 day non-suit from interfering with the consequences of a claimant's failure to furnish the required expert report, and 13.01(n) limits the right by creating an exception to the rule that the effect of a non-suit is to render a case as if it had never

moved former subsections (f) and (g), which provided a 30–day extension and a grace period, respectively, if a plaintiff failed to timely comply with the 180–day requirement. *See* Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(f), (g), 1995 Tex. Gen. Laws 985, 986 (repealed 2003). *Cf.* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351. Under the present statute, the only means for a plaintiff to extend the 120–day deadline for serving an expert report is by agreement of the affected parties. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a).

Allowing a plaintiff to restart the period for serving an expert report by simply nonsuiting her health care liability claim and refiling that same claim, could effectively expand the 120–day period to well over two years. *See id.* §§ 74.051(c), 74.251(a), 74.351(a) (tolling statute of limitations for period of 75 days after notice is given, setting forth two-year statute of limitations, and setting 120–day deadline for expert report). Such a procedure is inconsistent with the policies, goals, and statutory provisions set forth above.

### III. CONCLUSION

Under section 74.351(a), absent an agreement by the affected parties, the Meads were required to serve their expert report by March 23, 2004. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a). The record is devoid of any agreement, and it is undisputed the Meads served their report on March 24, 2004. Under section 74.351(b), on the health care providers' motions, the trial court was required to enter an order dismissing the claims against the health care providers with prejudice to refiling the claim. *See id.* § 74.351(b). Accordingly, we hold the trial court erred in denying the health care providers' motions.

Although the Meads missed the 120–day deadline by only one day, we are bound by the express provisions of the statute. It is the province of the legislature—not this court—to provide for extensions or grace periods regarding this deadline.

Because the Meads were not entitled to more than 120 days under the statute, their reports were untimely, and the trial court should have dismissed their claims. Accordingly, in cause number 14–04–00708–CV, we reverse the order of the trial court and remand with directions to the trial court to award the health care providers their reasonable attorney's fees and costs of court and to render judgment dismissing with prejudice the Meads' claims against the health care providers. Presuming for the sake of argument that we would otherwise have appellate jurisdiction over Dr. Mokkala's appeal in cause number 14–04–00845–CV, we dismiss this appeal as moot because the Meads nonsuited their claims in the 2003 case before the trial court denied Dr. Mokkala's motion to dismiss.

SEYMORE, J., dissents.

CHARLES W. SEYMORE, Justice, dissenting.

I respectfully dissent to the majority's reversal as to cause number 14–04–00708–

been filed.' " *Martinez,* 1 S.W.3d at 148. Observing that the legislature, in enacting House Bill 4, did not address Rule 162, the dissent suggests *Martinez* is still good law. Op. at 4, 178 S.W.3d at 78 (Seymore, J., dissenting). The court in *Martinez,* however, was considering a statutory structure containing specific provisions for nonsuits—provisions the legis-

lature removed in 2003. *See Martinez,* 1 S.W.3d at 147–49. *Cf.* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (Vernon 2005). Because the legislature removed the provisions in the predecessor statute referring to nonsuits, there was arguably no need for the legislature separately to address Rule 162.

CV because the trial court strictly applied precedent and the statute as written by the Texas Legislature. Accordingly, I cannot conclude that the trial court abused its discretion by denying appellants motion to dismiss.

Appellant's motion to dismiss was, in reality, a request for the trial court to impose the proverbial death penalty on appellees. This court should exercise great caution before concluding that the trial court acted unreasonably, arbitrarily, or without reference to any guiding principles. *See Rittmer v. Garza*, 65 S.W.3d 718, 721–22 (Tex.App.-Houston [14th Dist.] 2001, no pet.).

The trial court applied section 74.351(a) strictly as written by the Texas Legislature. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a)(Vernon Pamph.2004–05). The statute merely expresses that the claimant shall, "not later than the 120th day after the date the *claim was filed*, serve ... one or more expert reports ..." *Id.* In contrast, the majority has added a word that the legislature did not include. The statute does not express that the 120–day period for serving expert reports begins on the date the claim was *first* filed.

Moreover, the majority mistakenly relies on *Puls v. Columbia Hospital at Medical City Dallas Subsidiary, L.P.*, 92 S.W.3d 613 (Tex.App.-Dallas 2002, pet. denied) to support its conclusion that the 120–day period began when appellees first filed the 2003 case. *Puls* is distinguishable. In *Puls*, the Dallas court of appeals was construing similar language in the predecessor health care liability statute. The claimants in *Puls* were prosecuting more than one health care liability claim in the same suit. The Dallas court of appeals properly concluded that the "amendment of a petition to add a new claim constitutes *filing* of that claim." *Id.* at 618. Succinctly, the proper deduction from the ruling in

*Puls* is as follows: the 120–day period for a health care liability claim begins on the day a claimant files suit *and* asserts that *particular* health care liability claim within the pleadings. Otherwise, a claimant might find himself barred from adding a meritorious new claim to an existing lawsuit simply because of the passing of 120 days from the date suit was first filed. I respectfully submit that the Dallas court was appropriately eliminating an unintended procedural trap for the claimant.

Here, the majority creates a trap for the claimant, who should be allowed to reasonably rely on the procedural safeguards afforded under Rule 162, Texas Rules of Civil Procedure. To eliminate the procedural safeguard, the majority describes a "purported conflict" between the application of section 74.351(a) and Rule 162 where none exists. By creating a conflict, the majority can neatly dispose of Rule 162 by deferring to the statute. *See* TEX. CIV. PRAC. & REM.CODE. Ann. § 74.002(a) (Vernon Pamph.2004–05) (stating Chapter 74 controls to the extent it conflicts with another law). In a footnote, the majority refers to language in the predecessor statute permitting a plaintiff to non-suit an action if he fails to timely furnish an expert report. *See* Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(d)(2), (n), 1995 Tex. Gen. Laws 985, 986, 987 (repealed 2003). *Cf.* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). Notwithstanding inferences the majority has drawn from legislative history, it is my considered opinion that there is no conflict between the statute and the rule. Obviously, when the legislature enacted a comprehensive overhaul of health care liability in Texas, it could have expressly eliminated the claimants procedural safeguard of a Rule 162 non-suit without prejudice, but it did not.

Until today, no appellate court in Texas has concluded that a health care liability

claimant who files a non-suit without prejudice may not be returned to status quo ante without prejudice to initiate another suit. On the contrary, under similar facts, our sister court in Corpus Christi concluded that the trial court erred when it dismissed the second case after a claimant filed a non-suit without prejudice in the first case. *Martinez v. Lakshmikanth,* 1 S.W.3d 144 (Tex.App.-Corpus Christi 1999, pet. denied). Importantly, in *Martinez,* the 180–day period prescribed in the predecessor statute expired before the plaintiff filed a non-suit. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 1301(d)(2). The Corpus Christi court correctly concluded that the defendant *waived* his right to a remedy under the statute by not seeking dismissal after expiration of the 180–day period. *Id.* at 148. Instead, the court acknowledged that Rule 162 controlled. *Id.* at 149. In other words, under the former act, medical malpractice claimants could avail themselves of the benefits of Rule 162 even when they failed to timely file a non-suit before expiration of the 180–day period. The legislature enacted painstaking reform of health care liability in Texas. The tactical benefit afforded all litigants under Rule 162, Texas Rules of Civil Procedure, was not addressed. Accordingly, I respectfully disagree with the conclusion of the majority that the legislature intended to preclude litigants from exercising the right to file a non-suit without prejudice as prescribed by Rule 162 when it enacted House Bill 4.

It is my considered opinion that health care liability defendants are adequately protected through statutory entitlement to a dismissal with prejudice if a motion is timely filed before claimants file a non-suit. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b)(2) (Vernon Pamph. 200405). Moreover, in consideration of the undisputed chronology of events, I would not engage in an analysis of legislative history to support the conclusion that the trial court acted arbitrarily or without reference to guiding principles.

Accordingly, I respectfully dissent.