Affirmed and Opinion filed January 12, 2006









Affirmed
and Opinion filed January 12, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00658-CV

____________

 

MANOR CARE HEALTH
SERVICES, INC., FOUR SEASONS NURSING CENTERS, INC. D/B/A MANOR CARE HEALTH
CARE, STATEX CORPORATION D/B/A MANOR CARE HEALTH SERVICES, HCR MANORCARE
MESQUITE, L.P., AND HEALTHCARE & RETIREMENT CORPORATION OF AMERICA, Appellants

 

V.

 

JEROME RAGAN,
INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF PAULETTE RAGAN, DECEASED, Appellee

 



 

On Appeal from the 152nd
District Court

Harris County, Texas

Trial Court Cause No. 04-60904

 



 

O P I N I O N








Appellants, Manor Care Health Services,
Inc.; Four Seasons Nursing Centers, Inc. d/b/a Manor Care Health Care; Statex
Corporation d/b/a Manor Care Health Services; HCR Manorcare Mesquite, L.P.; and
Healthcare & Retirement Corporation of America, file this interlocutory
appeal from the trial court=s denial of their
motion to dismiss a health care liability claim.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 51.014(a)(9)
(Vernon Supp. 2005) (authorizing interlocutory appeals).  Appellee, Jerome Ragan, sued appellants in
his individual capacity and on behalf of the estate of Paulette Ragan,
deceased.  In their motion to dismiss,
appellants attacked the sufficiency of medical expert reports filed by
appellee.  On appeal, appellants contend
that in making its determination on the motion, the trial court should have
considered only the first expert report filed by appellee and not the second
report.  Appellants further contend that
regardless of whether only the first report is considered or both reports are
considered, the reports are deficient, and therefore, the trial court erred in
refusing to dismiss the claims.  We affirm.

Background

This is a tale of two lawsuits filed by
two different plaintiffs in two different courts.  It is also a tale of medical expert reports
alleged to be deficient, although timely filed, not one of two
plaintiffs= failures to timely file expert reports at
all.








On October 22, 2003, John Ragan, the
brother of decedent Paulette Ragan, filed a lawsuit ostensibly on behalf of her
estate in the 280th District Court in Harris County.  Paulette died on November 11, 2002, allegedly
from a pulmonary embolus while in the care of appellants, after having a lipoma
surgically removed from her thigh.  In
his lawsuit, John Ragan asserted that appellants= deviation from
the applicable standard of care proximately caused Paulette=s death.  Counsel for John Ragan filed a medical expert
report prepared by Dr. Louis Silverman and dated October 28, 2003.  Subsequently, appellants filed a motion to
dismiss, claiming that Silverman=s report was
deficient under section 4590i of the Texas Medical Liability and Insurance
Improvement Act (MLIIA).[1]   John Ragan then moved to nonsuit the
case.  On June 8, 2004, the trial court
dismissed the case pursuant to the nonsuit, without prejudice against refiling
and without addressing the motion to dismiss.

On October 28, 2004, Jerome Ragan,
Paulette=s father, filed
the current lawsuit in the 152nd District Court in his individual capacity
(under the Wrongful Death Statute[2])
and on behalf of Paulette=s estate (under the Survivor Statute[3]).[4]  Jerome=s counsel filed
the same expert report by Silverman that had been filed in the John Ragan
lawsuit.  Counsel also filed a second,
slightly more detailed report by Silverman. 
As discussed more fully below, in his reports, Silverman criticized
nurses employed by appellants for their alleged failure to continue
administering anticoagulant medication to Paulette as a doctor had
prescribed.  Silverman stated that had
the anticoagulant medication been continued, Paulette would probably not have
suffered the pulmonary embolus that resulted in her death.  Appellants filed a motion to dismiss,
arguing:  (1) the John Ragan lawsuit was
improperly nonsuited and thus the court in the Jerome Ragan lawsuit should only
consider the first Silverman medical report, which had been filed in the prior
lawsuit; (2) the Jerome Ragan lawsuit should be dismissed because the first
Silverman report was deficient; and (3) even if the trial court considered the
second Silverman report, it too was deficient and the Jerome Ragan lawsuit
should be dismissed.  On appeal,
appellants= arguments track those made in the motion
to dismiss.

How Many Reports to Consider?








We must first decide whether it was
appropriate for the trial court to consider both Silverman reports or just the
one that was filed in the first lawsuit. 
Appellants contend that the trial court should have considered only the
first report because John Ragan impermissibly nonsuited the first lawsuit.  Under Rule 162 of the Texas Rules of Civil
Procedure, although a plaintiff may generally take a nonsuit at any time, any
dismissal of the plaintiff=s claims pursuant
to the nonsuit will have no effect on any pending motion for sanctions.  Tex.
R. Civ. P. 162.  Because in health
care liability lawsuits, a claimant=s failure to
timely file a sufficient expert report may lead to dismissal of his or her
claims with prejudice against refiling, courts have held that a claimant may
not take a nonsuit under Rule 162 in such cases while a motion to dismiss is
pending.  See, e.g., Hagedorn v.
Tisdale, 73 S.W.3d 341, 345-47 (Tex. App.CAmarillo 2002, no
pet.); Puls v. Columbia Hosp. at Med. City Dallas Subsidiary, L.P., 92
S.W.3d 613, 618 (Tex. App.CDallas 2002, pet.
denied).

Appellants contend, therefore, that the
order of the 280th District Court recognizing the nonsuit of John Ragan=s claims is
interlocutory until the motion to dismiss filed with that court is
resolved.  Appellants further argue that
because the John Ragan lawsuit in the 280th District Court is unresolved, the
only expert report that the 152nd District Court could properly consider in the
Jerome Ragan lawsuit was the report timely filed in the earlier lawsuit.  We disagree.








As primary support for this argument, appellants cite an
unpublished opinion of the Austin Court of Appeals and assert that because it Acontains a procedural history nearly
identical to that of the present case,@ it is persuasive in the case before
us.  Wilson v. Austin Nursing Ctr.,
No. 03-00-00800-CV, 2002 WL 31118311 (Tex. App.CAustin Sept. 26, 2002, pet.
denied).  A review of the Wilson
case, however, reveals that it is procedurally distinguishable from the present
case.  Wilson addressed two
medical liability lawsuits filed at different times, involving the same injured
party and the same defendant.  2002 WL
31118311, at *1.  And, indeed, the first
lawsuit was nonsuited after the defendant filed a motion to dismiss for failure
to file an expert report.  Id.  There, the similarity to our case ends.  In contrast to the case before us, the two
lawsuits in Wilson were filed in the same district court by the same
plaintiff.  Id.  The trial court determined that when the
second suit was filed, the court still had plenary power in the first lawsuit
because the nonsuit in the first suit was improper.  Id. at *2.  It then granted the motion to dismiss with
prejudice in the first action; however, the court did not grant the motion to
dismiss in the second action because it found that the two lawsuits did not
involve the same conduct or injuries.  Id.  The Austin Court of Appeals affirmed.  Id. at *7.  In the case before us, the two lawsuits were
filed in different district courts by different plaintiffs, and the court in
which the second lawsuit was filed took no action in relation to the prior
lawsuit.  These procedural distinctions
are sufficient to dissuade us from considering Wilson as controlling.








Appellants additionally cite Martinez v. Lakshmikanth
for the proposition that a trial court has no discretion to dismiss a
healthcare liability claim without prejudice when a claimant fails to timely
file an expert report and the defendant moves to dismiss with prejudice.  1 S.W.3d 144 (Tex. App.CCorpus Christi 1999, pet.
denied).  However, unlike the claimant in
Martinez, John Ragan timely filed an expert report.  Thus, before the 280th District Court could
have dismissed the prior lawsuit with prejudice, it would have to have
considered the sufficiency of that report, and John Ragan could have requested
a 30-day grace period in which to file an amended report.  See Act of May 18, 1995, 74th Leg.,
R.S., ch. 141, ' 1, 1995 Tex. Gen. Laws 985, 986-87 (former art. 4590i, '' 13.01(g) and (l)).[5]  Consequently, even assuming that Jerome Ragan and
the 152nd District Court could somehow be bound by actions taken by John Ragan
in the 280th District Court (which has not been shown by appellees), the 152nd
still could have permitted Jerome Ragan to file an amended report.  Martinez is therefore distinguishable
and does not govern the present lawsuit.[6]

In conclusion, the present appeal is from
the 152nd District Court in the Jerome Ragan lawsuit; it is emanating from
neither the 280th District Court nor the John Ragan lawsuit.  Appellants have offered no factual or legal
basis to show why the 152nd court would be restricted to considering only the
report filed by a different claimant in a different district court.[7]  Accordingly, we will review both reports
timely filed in the current lawsuit in determining whether the claimant met the
statutory requirements.[8]

Sufficiency of the Reports

We review a trial court=s decision on a
motion to dismiss a case under section 74.351 of the Civil Practice and
Remedies Code for an abuse of discretion. 
Group v. Vicento,  164
S.W.3d 724, 727 (Tex. App.CHouston [14th
Dist.] 2005, pet. filed) (citing Am. Transitional Care Ctrs. of Tex., Inc.
v. Palacios, 46 S.W.3d 873, 875 (Tex. 2001)).[9]  Under section 74.351(l), a trial court should
grant a motion challenging the adequacy of an expert report if the report does
not represent an objective good faith effort to comply with the definition of
an expert report in subsection (r)(6).  Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(l).  Subsection (r)(6) defines Aexpert report@ as a written
report providing a good faith summary of the expert=s opinions
regarding the standard of care, the manner in which the care rendered by the
health care provider failed to meet the standard of care, and the causal
relationship between that failure and the harm claimed.  Id. '
74.351(r)(6).  Additionally, in order to
provide an acceptable report, the expert must establish that he or she is
qualified to do so.  Id. '
74.351(r)(5)(B).  Therefore, to be
adequate, an expert=s medical liability report must establish
his or her qualifications, the applicable standard of care, how that standard
was breached by the particular actions of the defendant, and how that breach
caused the damages claimed by the plaintiff. 
To constitute a good faith summary of the expert=s opinions, a
report must do more than merely state the expert=s conclusions; it
must fulfill two purposes: (1) inform the defendant of the specific conduct
that is being called into question, and (2) provide a basis for the trial court
to conclude that the plaintiff=s claims have
merit.  Palacios, 46 S.W.3d at
879.  Appellants contend that Silverman=s two reports fail
on each of the required elements.








Appellants first argue that Silverman was
not qualified to offer an opinion regarding the conduct of the nurses who
worked for appellees because the reports do not demonstrate that he has any
experience in nursing.  Appellants do not
cite any authority directly on point for their contention that to offer an
expert opinion regarding nursing care, a physician must have experience in nursing.

Section 74.402(b) requires that to be
qualified, an expert must (1) be practicing health care in a field that
involves the same type of care or treatment as the defendant, (2) have
knowledge of accepted standards of care for the diagnosis, care, or treatment
of the illness, injury, or condition claimed by plaintiff, and (3) be qualified
on the basis of training or experience to offer an expert opinion regarding the
standard of care.  Tex. Civ. Prac. & Rem. Code Ann. ' 74.402(b).  The statute does not require that the expert
be practicing in the exact same field, just in one that involves the same type
of care or treatment.  Id. '
74.402(b)(1).  Although there is little
Texas case law on the issue, a physician is not disqualified from offering an
opinion regarding nursing care simply because he is a physician and not a nurse
by profession.  See Hall v. Huff,
957 S.W.2d 90, 100 (Tex. App.CTexarkana 1997,
pet. denied) (holding that physician sufficiently demonstrated qualifications
to opine regarding nursing standards of care, noting that Ajust because [the
expert] is a physician does not necessarily render him unqualified as an expert
on nursing standards of care@); see also
Hillcrest Baptist Med. Ctr. v. Wade, 172 S.W.3d 55, 60 (Tex. App.CWaco 2005, pet.
filed) (holding that under section 74.403(a) only a physician may testify
regarding medical causation even in cases involving the conduct of nurses); Blan
v. Ali, 7 S.W.3d 741, 746-47 (Tex. App.CHouston [14th
Dist.] 1999, no pet.) (A[A] medical witness who is not of the same
school of practice may be qualified to testify if he or she has practical
knowledge of what is usually and customarily done by other practitioners under
circumstances similar to those that confronted the defendant . . . .@); Paris v.
Kreitz, 331 S.E.2d 234, 245 (N.C. Ct. App. 1985) (APhysicians are
clearly acceptable experts with regard to the standard of care for nurses.@); Goff v.
Doctors Gen. Hosp. of San Jose, 333 P.2d 29, 33 (Cal. 1958) (A[S]urely, a
qualified doctor would know what was standard procedure for nurses to follow.@).[10]








Regarding his qualifications, Silverman
stated in his first report:  AI am a Board
Certified General, Thoracic and Vascular Surgeon in active practice in Houston,
TX.  My credentials are detailed in the
attached CV.  I treat patients with skin
ulcerations such as that suffered by Ms. Ragan, and am qualified by education,
training, and experience to render an expert opinion regarding the quality of
such care.@ 
Silverman=s curriculum vitae, which was
attached to the report, details significant experience in the research and
practice areas of general, thoracic, and vascular surgery.  In his reports, as detailed below, Silverman
specified what the nursing staff should have done in treating Paulette (i.e.,
continue administering her prescribed anticoagulant medication) and what they
failed to do (i.e., continue administering her prescribed anticoagulant
medication).

It is important to note that Silverman is
not professing to be an expert on all things related to nursing; he merely
opines that in the situation presented in this case, the nursing staff had the
responsibility to administer all of the anticoagulant medication prescribed by
the physician.  Silverman=s experience and
knowledge in regard to the type of care at issue here qualifies him to make
this conclusion.  Accordingly, we find
that the trial court did not abuse its discretion in determining that Silverman=s assertion of
qualification was adequate under the statute.








Appellants next assert that Silverman
failed to adequately discuss the relevant standard for the nursing care of
patients such as Paulette.  Indeed,
appellants assert that Silverman wholly failed to set out a standard of
care.  We disagree.  Silverman stated that Aa patient whose
physical status and habitus renders her vulnerable to developing pulmonary
emboli requires initiation and maintenance of an appropriate level of
anticoagulation through the period of vulnerability.@  He further stated that the responsibility for
ordering anticoagulant therapy belongs to the treating physician but that Manor
Care=s staff had the
responsibility to administer the therapy as ordered.  He further described in some detail Paulette=s medical history
and status that rendered her vulnerable to developing pulmonary emboli.

In Palacios, the sole case cited by
appellants in support of their argument, the Supreme Court found that an expert
report was deficient because the expert failed to at least state what the
defendant should have done under the standard of care.  46 S.W.3d at 879-80.  The court emphasized that a Afair summary@ does not require
a full statement of the standard of care but is sufficient so long as it states
what the defendant should have done that he or she indeed did not do.  Id. at 880.  Here, Silverman specifically described what
he believed the nursing staff should have done and why they should have done itCthey should have
continued administering anticoagulant medication as directed by the physician
because this treatment probably would have prevented Paulette from developing
pulmonary emboli.  This is a succinct and
sufficient statement of the standard of care for the nurses in this case.[11]

Appellants next argue that Silverman did
not adequately discuss the alleged breach of the standard of care.  Regarding breach, Silverman stated that
according to medical records, Paulette received appropriate doses of
anticoagulant medication for a period of time (November 1 through November 8)
and then AManor Care=s staff failed to
administer the last 2 days of anticoagulant therapy as ordered@ (November 9 and
10).  We find Silverman=s statement to be
an adequate summary of his conclusions regarding breach of the standard of
care.








Lastly, appellants argue that Silverman
failed to adequately address causation. 
Appellants specifically assert that Silverman failed to use the terms Acausation@ or Aproximate cause@ and that he
failed to explain the link between the alleged breach and Paulette=s death.  Regarding causation, Silverman averred that AManor Care staff=s failure to
continue anticoagulant treatment as ordered contributed to [Paulette=s] pulmonary
embolus.@  He stated that A[h]ad this therapy
been continued as the standard of care mandates, in all reasonable medical
probability, [Paulette] would not have suffered the massive pulmonary emboli
that caused her irreversible cardiac arrest.@  He further opined that A[t]he failure to
continue this needed therapy clearly resulted in Ms. Ragan=s demise.@  Although he did not use the specific terms
identified by appellants, his meaning was made clear by the use of terms such
as Acontributed to,@ Aresulted in,@ Awould not have
suffered,@ and Acaused.@  Furthermore, viewed in the context of
Silverman=s description of Paulette=s condition, what
the nurses should have done, and what they failed to do, it is clear that he is
saying that the administration of anticoagulant medication as prescribed was
necessary to prevent Paulette from suffering pulmonary emboli and that because
the drugs were not administered as prescribed, Paulette probably suffered
pulmonary emboli and consequently died. 
Silverman=s contention that the nurses= breach of the
standard of care is linked to her death is adequately explained in the
report.  Because we find that Silverman=s expert report
adequately described his qualifications and summarized his conclusions
regarding the standard of care, breach of the standard of care, and causation
elements, we overrule appellants= second issue.

We affirm the trial court=s order.

 

/s/      Adele Hedges

Chief Justice

 

Judgment
rendered and Opinion filed January 12, 2006.

Panel
consists of Chief Justice Hedges and Justices Yates and Anderson.











[1]  Act of May 30,
1977, 65th Leg., R.S., ch. 817, ''
1.01‑41.05, 1977 Tex. Gen. Laws 2039‑64 (subsequent amendments
omitted) (former Tex. Rev. Civ. Stat.
Ann. art. 4590i (Vernon Supp. 2003)), repealed by Act of June 2,
2003, 78th Leg., R.S., ch. 204, ' 10.09,
2003 Tex. Gen. Laws 864, 884 (current version at Tex. Civ. Prac. & Rem.
Code Ann. ''
74.001‑.507 (Vernon Supp. 2005)). 
John Ragan filed his lawsuit before the repeal of article 4590i;
therefore, it was governed by the provisions of article 4590i in effect at that
time.  See Act of June 2, 2003,
78th Leg., R.S., ch. 204, ' 23.02(d), 2003 Tex. Gen. Laws at 899.  Both former article 4590i and current section
74.351 require that a claimant asserting a health care liability claim must
file an expert medical report in support of his or her claim within a specified
period of time.





[2] Tex. Civ.
Prac. & Rem. Code Ann. '
71.001-.011 (Vernon 1997 & Supp. 2005).





[3]  Tex. Civ. Prac. & Rem. Code Ann. ' 71.021 (Vernon 1997).





[4]  Jerome Ragan
filed his lawsuit after the effective date of section 74.351 of the Civil
Practice & Remedies Code; thus, that section governs his claim.  See Act of June 2, 2003, 78th Leg.,
R.S., ch. 204, ' 23.02(d), 2003 Tex. Gen. Laws at 899.





[5]  Both the current law governing
expert reports in health care liability claims, section 74.351, and the prior
law governing such reports, former article 4590i, section 13.01, provide for
extensions or grace periods for filing an amended expert report when a claimant
timely filed an initial expert report that may be deficient.  Under former article 4590i, section 13.01(g),
which governed the John Ragan lawsuit, a trial court may grant a 30-day grace
period if the failure to meet the deadline was due to accident or mistake and
not the result of conscious indifference. 
A motion seeking such grace period is considered timely if filed before
any hearing on a motion to dismiss.  See
Hansen v. Starr, 123 S.W.3d 13, 20-21 (Tex. App.CDallas 2003, pet. denied) (holding
claimants waived contention they were entitled to grace period by failing to
file request before hearing on motion to dismiss); Strom v. Mem=l Hermann Hosp. Sys., 110 S.W.3d 216, 226 (Tex. App.CHouston [1st Dist.] 2003, pet.
denied) (same).  The current law
governing health care liability expert reports, section 74.351, permits the
trial court to grant a 30-day extension for the claimant to file an amended
report if the initial report is determined to be deficient.  Tex.
Civ. Prac. & Rem. Code Ann. ' 74.351(c).  The current version omits subsections of the
prior law which permitted extensions where no report had been filed by the
deadline.  See Mokkala v. Mead,
No. 14-04-00708-CV, 2005 WL 1377766, at *7 (Tex. App.CHouston [14th Dist.] June 2, 2005,
no pet. h.).





[6]  For the same
reasons, our recent opinion in Mokkala is distinguishable.  2005 WL 1377766.  Mokkala also concerned two lawsuits involving the same patient and the same
alleged conduct by the same health care providers.  2005 WL 1377766, at *1-2.  We held that when a claimant with a health
care liability claim nonsuits the original lawsuit and refiles his or her claim
in a subsequent lawsuit, the 120-day period for filing an expert report does
not start over with the filing of the second lawsuit but runs from the time the
claim was first filed in the original lawsuit. 
Id. at *1, *4.  The
claimant in Mokkala failed to file a report in the first lawsuit before
the expiration of 120 days; thus, when the claimant filed the second lawsuit
(after taking a nonsuit in the first) the trial court should have granted the
motion to dismiss for failure to file an expert report within 120 days of the
initial filing.  Id. at *8.  We reversed and remanded on that basis.  Id. 
In the situation now before us, John Ragan timely filed an expert report
in the prior lawsuit, and the subsequent lawsuit was filed by a different plaintiff,
alleging at least one additional cause of action (wrongful death).  Because of these distinctions, the holding in
Mokkala does not apply here.





[7] We acknowledge that under Rule 330(g) of the Texas
Rules of Civil Procedure, in a county that has two or more district courts with
civil jurisdiction, any judge may hear only part of any case or
proceeding.  Tex. R. Civ. P. 330(g); see also Tex. Gov=t Code Ann. ' 74.094(a) (Vernon Supp. 2005); Pinnacle Gas
Treating, Inc. v. Read, 160 S.W.3d 567, 566-67 & n. 2 (Tex. 2005); In
re Garza, 981 S.W.2d 438, 441 (Tex. App.CSan
Antonio 1998, orig. proceeding). 
However, the situation in the present case is not one in which a
district judge is purporting to act in a district court that is not his or her
own.  See, e.g., Pinnacle Gas, 160
S.W.3d at 566.  As discussed, the John
Ragan and Jerome Ragan lawsuits are distinct actions filed in different
district courts.  Appellants did not
request that the judge of the 152nd rule on the motion to dismiss in the John
Ragan lawsuit in the 280th, but requested the judge of the 152nd to dismiss the
Jerome Ragan lawsuit in the 152nd because the prior lawsuit should have been
dismissed in the other court.  Rule
330(g) and section 74.094(a) do not apply to this situation.





[8]  Jerome Ragan
maintains on appeal that John Ragan nonsuited his prior claims because he was
not named as administrator of Paulette=s
estate.  However, the record before us is
devoid of any evidence regarding the identity of the proper representative of
the estate.  Furthermore, because of our
resolution of the issues in the text above, we need not resolve who the proper
representative of the estate is (or was).





[9]  Palacios was
decided under prior law.  See supra
n.1, 4.





[10]  The case of Sullivan
v. Edward Hospital is also instructional. 
806 N.E.2d 645 (Ill. 2004).  In Sullivan,
the Illinois Supreme Court upheld the trial court=s
striking of a physician=s trial testimony regarding the standard of care for
nurses.  Id. at 653.  The court determined that under Illinois law,
which requires an expert to be licensed in the same profession as the
defendant, a physician ordinarily could not provide an expert opinion regarding
nursing standards of care.  Id. at
653-660.  However, the court noted two
important situations where this reasoning would not hold true: (1) when the
expert opinion in question was contained in the preliminary report required at
the onset of a medical malpractice case, and (2) when the expert opinion does
not potentially hold the nurse to a higher standard because the testifying
expert is a physician.  Id. at
656-57.  The latter point is amply
illustrated in Wingo v. Rockford Memorial Hospital, wherein three
physicians were permitted to testify that a nurse violated the standard of care
by not properly communicating with her supervising physician.  686 N.E.2d 722, 729 (Ill. 1997).  Both of the situations noted by the Sullivan
court are present here: (1) Silverman=s
opinion was contained in a preliminary expert report, and (2) his opinion does
not appear to hold the nurses to a higher standard.  Silverman basically opined regarding the
nurses= duty to administer medication as prescribed by the
physician, an issue about which a physician with Silverman=s experience should be very familiar.  We further note that Texas law does not
include a requirement (as does Illinois) that the expert must be licensed in
the same profession as the defendant.  See Tex. Civ.
Prac. & Rem. Code Ann. ' 74.402(b).





[11]  At oral
argument, appellants additionally suggested that it was not a reasonable
inference that the nurses should have administered all of the prescribed
medication as directed because there may be situations in which a nurse should
not administer all of the prescribed medication to a patient.  However, this generalized, speculative,
unsupported argument does nothing to detract from Silverman=s context-specific statements.  There is no requirement that an expert cover
all conceivable possibilities in his preliminary section 74.351 report.