Mary PULS, Individually and on Behalf of the Estate of Richard J. Puls, M.D., Deceased; Alan Puls, M.D.; Larry Puls, M.D.; and Gloria Gaschler, Appellants,

v.

COLUMBIA HOSPITAL AT MEDICAL CITY DALLAS SUBSIDIARY, L.P. d/b/a Medical City of Dallas, Appellee.

No. 05–02–00086–CV.

Court of Appeals of Texas, Dallas.

Nov. 25, 2002.

Jason Marina, Larry Chad Kluever, Law Office of James C. Barber, Dallas, William E. Zook, Mesquite, for Appellants.

Mark Tolleson Smith, Kenneth S. Beat, Strasburger & Price, LLP, Dallas, for Appellee.

## OPINION

Opinion by Justice ROSENBERG (Assigned).

This is a medical malpractice case. In a single point of error, Mary Puls, individually and on behalf of the Estate of Richard J. Puls, M.D., deceased; Alan Puls, M.D.; Larry Puls, M.D.; and Gloria Gaschler contend that the trial court erred in dismissing their claims against Columbia Hospital at Medical City Dallas Subsidiary, L.P. d/b/a Medical City of Dallas (Medical City) after they provided an expert report within 180 days of adding to an existing suit health care liability claims against certain nurses who were employees of Medical City. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01 (Vernon Supp. 2003) (Medical Liability and Insurance Improvement Act, or the Act). Because the

180–day deadline for filing an expert report begins to accrue from the filing date of the health care liability claim to which it is relevant, we reverse and remand this case to the trial court for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellants filed suit against Medical City and others on August 8, 2000, alleging that certain physicians and hospital personnel negligently performed coronary artery bypass surgery on Richard J. Puls, M.D. on June 1, 1999. In their original petition, appellants named Richard Davila, a perfusionist, and alleged that Davila was an employee of Medical City and was negligent in failing to convert to pump support during the surgery.[3] Appellants imputed the perfusionists' negligence to Medical City.

On January 16, 2001, appellants filed an expert report and curriculum vitae from Merrill H. Bronstein, M.D., as required by section 13.01 of the Act. On April 24, 2001, Medical City filed a motion to dismiss pursuant to section 13.01, contending that the expert report was inadequate pursuant to section 13.01(r)(6) and that sanctions should be awarded, including the dismissal of the case, pursuant to section 13.01(e).

On May 15, 2001, appellants filed a second amended original petition, naming Kim Patterson, R.N., R. Daley, R.N., and unknown nurses, in addition to Davila and an unknown perfusionist. Appellants alleged that the nurses were employees of Medical City and were negligent in failing to properly monitor and assess the condition of Richard Puls post-operatively, to report Richard Puls's deteriorating condition post-operatively, and to undertake appropriate interventions to prevent Richard Puls's exsanguination. As in the allegations that Medical City was vicariously liable for the perfusionists' negligence, appellants alleged the nurses' negligence should be imputed to Medical City.

On June 15, 2001, appellants filed a response to the motion to dismiss and, conditioned on the trial court's granting Medical City's motion, moved for leave to nonsuit Medical City regarding the vicarious claim through Davila's negligence and refile the claims against the nurses and Medical City.

At a hearing on June 18, 2001, counsel for appellants stated that the claims regarding the perfusionists were being nonsuited. The parties and the court discussed the filing of an expert report regarding the claims against the nurses, and the trial court informed appellants that it expected appellants to file a report for the new claims. Subsequently, the trial court signed an agreed order nonsuiting appellants' claims against Davila without prejudice; counsel for appellants and for Davila signed the order. Later, the trial court signed an order denying Medical City's motion for dismissal from the suit and granting appellants' nonsuit of the claims against Medical City based on respondeat superior for the perfusionist.

On October 15, 2001, Medical City filed an amended motion to dismiss pursuant to section 13.01 and, alternatively, a motion for rehearing, in which Medical City moved that appellants' "claims against [Medical City] be dismissed with prejudice." Medical City contended that sec-

---

3. The record shows that a perfusionist is a technician who specializes in management of a heart-lung machine during cardiopulmonary bypass surgery. Appellants also named an unknown perfusionist, but there is no record that a second perfusionist was ever served. There are no specific allegations regarding the unknown perfusionist.

tion 13.01 did not provide that the 180–day deadline to file an expert report could be extended each time a new allegation or different theory was included in an amended pleading against an already-sued defendant. On November 5, 2001, appellants provided an expert report criticizing the nurses' actions.[4] Also on November 5, 2001, the trial court held a hearing on Medical City's amended motion to dismiss. On November 19, 2001, the trial court granted Medical City's motion and dismissed all appellants' claims against Medical City. The trial court then entered an order severing the claims against Medical City from claims against the other defendants and rendering a take-nothing judgment in favor of Medical City. This appeal followed.

## APPLICABLE LAW AND STANDARD OF REVIEW

Section 13.01(d) of the Act provides:

Not later than the later of the 180th day after the date on which a health care liability claim is filed ... the claimant shall, for each physician or health care provider against whom a claim is asserted:

(1) furnish to counsel for each ... health care provider one or more expert reports, with a curriculum vitae of each expert listed in the report; or

(2) voluntarily nonsuit the action against the ... health care provider.

*Id.* § 13.01(d). If the claimant fails to comply with subsection (d) within the time required, the court shall, on motion of the health care provider, award, as sanctions against the claimant or the claimant's attorney, the reasonable attorney's fees and costs, forfeiture of any cost bond respecting the claim against that defendant, and

dismissal of the claimant's action against that defendant with prejudice. *Id.* § 13.01(e). A "health care liability claim" is

a cause of action against a health care provider ... for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in tort or contract.

*Id.* § 1.03(a)(4). An "expert report" is a written report by an expert that provides a fair summary of the expert's opinions "regarding applicable standards of care, the manner in which the care rendered by the ... health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 13.01(r)(6).

We review a trial court's dismissal pursuant to section 13.01(e) under an abuse of discretion standard. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 878 (Tex.2001). A trial court has no discretion in determining what the law is or applying the law to the facts. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992) (orig. proceeding). Thus, a clear failure by the trial court to analyze or apply the law correctly constitutes an abuse of discretion. *Id.*

## DISCUSSION

■ In their single point of error, appellants contend that the trial court erred in dismissing their claims against Medical City based on the nurses' alleged negligence, even though they provided an expert report concerning those claims within

---

4. The record of the November 5, 2001 hearing shows that this expert report was furnished to Medical City's counsel before the

hearing. Medical City argued that it was irrelevant because it was filed 450 days after suit was filed and was, therefore, untimely.

180 days of May 15, 2001, the date of filing suit against the nurses. Appellants contend that the deadline for providing an expert report as to Medical City's vicarious liability for the nurses' negligence ran from the date of the amended pleading and thus they had until about November 15, 2001 to provide that expert report. Medical City responds that dismissal with prejudice of the claims against it was mandatory because the Bronstein report was inadequate as to the perfusionist, the nurses, or Medical City, and the October 15, 2001 amended motion to dismiss was filed after the 180–day deadline had passed, measured from the date suit was filed against Medical City. Medical City reasons that section 13.01 and *Palacios* require appellants to furnish an expert report within 180 days of filing suit against Medical City, or, if they timely filed an inadequate report, to request a thirty-day grace period pursuant to section 13.01(g). Medical City argues that the case was properly dismissed because, as of November 5, 2001, Medical City had been in the suit continuously, without interruption, for more than 450 days, no adequate expert report had been filed during that period, and no request for extension of time to file the report had been made.

■ In construing a statute, we try to determine and give effect to the legislature's intent. *State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex.2002) (citing Tex. Gov't Code § 312.005 (Vernon 1998)). We look first to the "plain and common meaning of the statute's words." *Id.* (citation omitted). If a statute's meaning is unambiguous, we generally interpret the statute according to its plain meaning. *Id.* Moreover, we determine legislative intent from the entire act and not just from isolated portions. *Id.* Thus, we "read the statute

as a whole and interpret it to give effect to every part." *Id.* (citation omitted).

Here, appellants' lawsuit against Medical City was initiated with a single health care liability claim asserted in the original petition filed August 8, 2000. That claim alleged that Medical City was vicariously liable for the perfusionists' actions during surgery. Section 13.01(d) states that an expert report is due "[n]ot later than the later of the 180th day after the date on which a *health care liability claim* is filed . . . ." Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(d) (emphasis added). Pursuant to section 13.01(d), an expert report regarding the standard of care applicable to a perfusionist's acts during surgery was due 180 days after that claim was filed.

■ Medical City's interpretation of the above phrase would require a plaintiff to furnish an expert report 180 days after *suit* is filed, but section 13.01(d) plainly and unambiguously says *claim*, not *suit*. A health care liability claim is "a cause of action against a health care provider . . . for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety." *Id.* § 1.03(a)(4). That is, it is a theory of a health care provider's liability. Here, appellants pleaded two claims, alleging that Medical City was vicariously liable for the perfusionists' conduct during surgery and for the nurses' post-operative actions. Section 13.01(d) requires experts' opinions as to the standards of care applicable to each claim. *See Wood v. Tice*, 988 S.W.2d 829, 830 (Tex.App.-San Antonio 1999, pet. denied) (citing Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(i)–(j)). The deadline for bringing claims is the statute of limitations in section 10.01, which requires a plaintiff to bring an action within two years from the date of the medical or health care treatment that is the subject of the claim, subject to certain exceptions not

relevant here. TEX.REV.CIV. STAT. ANN. art. 4590i, § 10.01 (Vernon Supp.2003). But nothing in the Act precludes a plaintiff from bringing additional claims within the limitations period and then furnishing an expert report within the section 13.01(d) deadline as to the additional claims. *See, e.g., Marquez v. Providence Mem'l Hosp.,* 57 S.W.3d 585, 588 (Tex.App.-El Paso 2001, pet. denied) (describing amendments to petition alleging medical malpractice causes of action and deadline for expert report as to new defendants). Further, rule of civil procedure 62 provides that a party may file an amended pleading "to plead new matter, additional to that formerly pleaded by the amending party, which constitutes an addition ... permissible to the suit." TEX.R. CIV. P. 62. And a party may file an amended pleading subject to the provisions of rule 63. TEX.R. CIV. P. 63. By amending its petition on May 15, 2001, appellants alleged, for the first time, a health care liability claim against Medical City for vicarious liability arising from the nurses' alleged post-operative actions. According to the plain meaning of section 13.01(d), filing a claim arising from the nurses' negligence began the period for timely furnishing an expert report as to that claim. Nothing in the statute distinguishes between claims for direct and vicarious liability. Thus, the amendment of a petition to add a new claim constitutes *filing* of that claim pursuant to section 13.01(d) and triggers the expert report deadline as to any defendant sued in either a direct or vicarious capacity.

Medical City relies on the statement in *Palacios* that, if a trial court determines that an expert report does not meet the statutory requirements and the time for filing a report has passed, it must dismiss with prejudice the claims against the defendant that challenged the report, pursuant to section 13.01(e). *Palacios,* 46 S.W.3d at 877 (citing TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(d), (e)). However, there is nothing in *Palacios* showing that the plaintiff amended his petition to add new theories of liability against any defendant or nonsuited any claims. There was no issue in *Palacios* regarding the 180–day period for filing an expert report. Rather, the issue there was the standard of review of a trial court's determination of the adequacy of an expert report. *Id.* at 877.

Medical City also argues that, pursuant to rule of civil procedure 162 and *Hagedorn v. Tisdale,* 73 S.W.3d 341 (Tex. App.-Amarillo 2002, no pet.), a nonsuit has no effect on a motion for sanctions pending at the time of the nonsuit. Rule 162 provides the circumstances under which a plaintiff may take a nonsuit and further provides: "A dismissal under this rule shall have no effect on any motion for sanctions, attorney's fees or other costs, pending at the time of dismissal, as determined by the court." TEX.R. CIV. P. 162. A motion to dismiss pursuant to sections 13.01(d) and (e) is a motion for sanctions. *Palacios,* 46 S.W.3d at 877–78. In *Hagedorn,* 73 S.W.3d at 345, the plaintiff argued that he had an absolute right to nonsuit his health care liability claims at the time a motion to dismiss pursuant to section 13.01(d) had been filed, with the result that the trial court had no jurisdiction to rule on the motion for dismissal. Rejecting this argument, the Amarillo court of appeals concluded that rule 162 prevented a party from voluntarily nonsuiting its claims after a motion to dismiss with prejudice pursuant to section 13.01(e) was filed, thus avoiding dismissal with prejudice as a sanction. *Id.* at 346–47.

Here, before appellants nonsuited their claims against Medical City for vicarious liability arising from the perfusionist's actions, Medical City moved for dismissal of

those claims with prejudice as a sanction for failure to file a proper expert report. Because appellants could not avoid the sanctions set forth in section 13.01(e) for failure to comply with section 13.01(d) by nonsuiting these claims after a motion to dismiss these claims had been filed, the trial court properly dismissed with prejudice the vicarious liability claims arising from the allegations regarding the perfusionist. *See id.*

However, as noted above, appellants' time period for furnishing to Medical City an expert report regarding the standard of care applicable to the nurses' post-operative conduct began on May 15, 2001, the date that vicarious liability claim was filed, and ran through November 11, 2001. Appellants furnished such a report on November 5, 2001. Because appellants timely furnished an expert report regarding vicarious liability for the nurses' negligence, sanctions of dismissal of those claims cannot be imposed against them.

Next, Medical City argues that Bronstein's report was not adequate with reference to the nurses. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(r)(6) (defining expert report). As stated above, appellants furnished a separate expert's report with respect to those claims. (Medical City did not challenge the adequacy of this report.)

Last, Medical City argues that the deadline for furnishing a report to the nurses began to accrue on May 15, 2001, when they were named in the amended petition, but the deadline for furnishing a report to Medical City continued to run from August 8, 2000, when it was first named as a defendant. However, as we have determined above, the deadline for furnishing an expert report begins when a health care liability claim is filed against a defendant, not when the defendant is first named in a suit. Thus, the deadline for providing an expert report regarding the nurses' negligence began to run on May 15, 2001 and applies to both direct liability claims against the nurses and vicarious liability claims against Medical City.

Because appellants voluntarily nonsuited their vicarious liability claims regarding the perfusionist's negligence after Medical City filed its motion to dismiss those claims, the trial court properly dismissed those claims with prejudice. We resolve appellants' issue against them regarding that claim. However, because the deadline for providing an expert report regarding the vicarious liability claims arising from the nurses' negligence began to accrue when appellants filed those claims by filing an amended petition, and appellants furnished an expert report concerning those claims within the 180-day period, the trial court improperly dismissed those claims. Therefore, we resolve appellants' issue in their favor as to the vicarious liability claims regarding the nurses' negligence. Accordingly, we affirm the trial court's judgment as to the vicarious liability claims regarding the perfusionist, and we reverse the judgment as to the vicarious liability claims regarding the nurses and remand those claims for further proceedings.