Opinion issued February 1, 2008 

 




 







In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-07-00197-CV

____________


RAYMON POLAND, INDIVIDUALLY AND AS INDEPENDENT
ADMINISTRATOR OF THE ESTATE OF JESSIE POLAND, ROBERT
MARTIN, and FRANK MARTIN, Appellants


V.


DR. ALINA GRIGORE and DR. ARTHUR S. KEATS & ASSOCIATES,
Appellees






On Appeal from 152nd District Court

Harris County, Texas

Trial Court Cause No. 2006-38894(a)






O P I N I O N



 Appellants, Raymon Poland, individually and as independent administrator of
the estate of Jessie Poland, Robert Martin, and Frank Martin ("the Poland parties"),
appeal from a judgment dismissing their health-care-liability and related claims
against appellees, Dr. Alina Grigore and Dr. Arthur S. Keats & Associates. We
determine whether the trial court erred in granting appellees' motion to dismiss the
claims against them for the Poland parties' failure timely to serve an expert report on
them. We affirm.

Background


 The factual recitations come mainly from the Poland parties' petition. 
Appellant Raymon Poland was the husband of Jessie Poland; the remaining
appellants were his natural children. In August 2003, Jessie Poland, under the care
of Dr. James Willerson (an appellee in a related appeal) and Dr. Ott (an appellee in
another related appeal), was hospitalized at St. Luke's Episcopal Hospital and the
Texas Heart Institute (both appellees in another related appeal) for an elective
surgical procedure to repair her heart's mitral valve. Appellee Dr. Alina Grigore, who
was employed by appellee Dr. Arthur S. Keats & Associates, was the anesthesiologist
for the surgical procedure. The Poland parties alleged that, at the time of surgery,
Jessie Poland's blood contained a level of Coumadin that the health-care providers
should have known rendered her blood fully anti-coagulated and, thus, rendered
surgery dangerous. The surgery was nonetheless performed; Jessie Poland bled
internally; and she died several days later of multi-system organ failure.

 In their original and first amended petitions, both of which were filed on
October 24, 2005, the Poland parties sued, among other defendants, St. Luke's
Episcopal Hospital, the Texas Heart Institute, the University of Texas Health Science
Center at Houston, Dr. Arthur S. Keats & Associates, and Drs. Ott, Grigore, and
Willerson for Jessie Poland's wrongful death, for her pain and suffering and medical
costs before her death, and for her burial expenses. By the time of the trial court's
complained-of ruling, the Poland parties had amended their petition two more times
to allege the following causes of action or theories of recovery against all defendants,
including appellees: (1) negligence, (2) gross negligence, (3) actual and constructive
fraud, (4) intentional infliction of emotional distress, (5) assault and battery, (6)
intentional and negligent abandonment, (7) breach of fiduciary duties, (8) "negligent
breach of fiduciary duties," (9) malpractice, (10) "lack of proper informed consent,"
(11) "tampering with official medical records," (12) "forgery," (13) violations of the
Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), (1) and (14)
conspiracy among all defendants. This "live," third amended petition also added
allegations that the defendants had altered Jessie Poland's medical records and forged
Raymon Poland's signature on unspecified hospital documents. The Poland parties
sought actual and exemplary damages.

 Appellees moved to dismiss, under Texas Civil Practice and Remedies Code
section 74.351(b), the Poland parties' health-care-liability claims against them for
failure to serve an expert report upon them or their attorneys within 120 days of the
filing of the claims against them. (2) See Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351(b) (Vernon Supp. 2007) (providing that trial court must dismiss health-care-liability claim against defendant if claimant fails to serve expert's report and
curriculum vitae on that defendant within period specified by section 74.351(a)); Act
of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875
(providing that claimant must serve each defendant against whom health-care-liability
claim is asserted with expert's report and curriculum vitae not later than 120 days of
claim's filing) [hereinafter, "former section 74.351(a)"], amended by Act of May 18,
2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590 (current version
at Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (Vernon Supp. 2007)). 
Appellees, like several other defendants, also objected to or moved to strike the
Poland parties' live petition to the extent that it attempted to recast health-care-liability claims as other causes of action.

 Appellees' motion to dismiss alleged that the Poland parties had served the
report of their expert, Dr. Dennis Moritz, (3) on Dr. Grigore's attorney 123 days after
their claims had been filed against her and that the Poland parties had never served
their report on Dr. Arthur S. Keats & Associates. The motion further asserted an
additional, independent basis for dismissing the claims against Dr. Arthur S. Keats
& Associates: because the claims against Dr. Arthur S. Keats & Associates were
based solely on respondeat superior for Dr. Grigore's actions, the claims against it
had to be dismissed when the claims against Dr. Grigore were dismissed for failure
timely to serve the expert report on her.

 The hearing on appellees' motion to dismiss and their objections to the live
petition occurred on July 14, 2006. Other defendants' motions to dismiss, objections
to the expert report, and motions to strike the live petition were heard simultaneously. 
No additional evidence was presented at the hearing. At the hearing, the Poland
parties did not deny that they had served Dr. Moritz's May 2, 2005 expert report and
curriculum vitae ("CV") on appellees' counsel 123 days after the filing of their first
amended petition, the petition that appellees alleged had triggered the 120-day-service deadline, but instead argued that they had not alleged health-care-liability (or
any) claims against either appellee until their second amended petition, which was
filed and served along with a second unsigned report of Dr. Moritz, dated May 19,
2006. (4)

 On October 30, 2006, the trial court rendered an interlocutory order that,
among doing other things, dismissed the claims against appellees with prejudice:

 On July 14, 2006 . . . CAME TO BE HEARD all parties, by and through
counsel, Dr. Aline Grigore and Arthur S. Keats & Associates' [sic]
Motion to Dismiss and Objections to Plaintiff's [sic] Expert Report . . . . 
The Court, having considered such Motions and Objections, having
reviewed the file herein, and heard the argument of counsel, makes the
following FINDINGS OF FACTS and ORDERS:


 1. Plaintiffs . . . filed their Original Petition on October 24,
2005. The 120-day deadline by which Plaintiffs were
required to serve their expert reports pursuant to Section
74.351 of the Tex. Civ. Prac. & Rem. Code was February
21, 2006. The earliest date that Plaintiffs served an expert
report to any Defendant, after the filing of their lawsuit,
was on February 24, 2006.


 . . .


 6. With respect to Defendants Dr. Alina Grigore and Arthur
S. Keats & Associates Plaintiffs served Dr. Alina Grigore
and Arthur S. Keats & Associates with an unsigned expert
report from Dennis Moritz, M.D., on February 24, 2006. 
The deadline to serve an expert report pursuant to § 74.351
of Tex. Civ. Prac. & Rem. Code was February 21, 2006. 
The Court hereby finds that Plaintiff's [sic] expert report
was untimely served as to Dr. Alina Grigore and Arthur S.
Keats & Associates. The Court further finds that Arthur S.
Keats & Associates is a party to the suit under the theory of
vicarious liability and because all claims against Dr. Alina
Grigore must be dismissed with prejudice due to a failure
to provide an expert report, Dr. Alina Grigore and Arthur
S. Keats & Associates must also be dismissed. Based on
the foregoing, it is ORDERED that Defendants Dr. Alina
Grigore and Arthur S. Keats & Associates' Motion to
Dismiss and Objections to Plaintiff's [sic] Expert Report
[be] GRANTED, and that Defendants Dr. Alina Grigore
and Arthur S. Keats & Associates [be and] are hereby
DISMISSED with prejudice.


 . . .


 7. It is further ORDERED that pursuant to Section 74.351 of
the Tex. Civ. Prac. & Rem. Code that . . . Defendants Dr.
Alina Grigore and Arthur S. Keats & Associates [be]
awarded attorney's fees in the amount of $34,373.00 . . . . 
The collection of these attorney's fees is stayed pending
outcome of any interlocutory appeal.


This same order also (1) denied St. Luke's Episcopal Hospital and the Texas Heart
Institute's motion to dismiss under Texas Civil Practice and Remedies Code section
74.351 and (2) granted Dr. Ott's motion to dismiss under section 74.351(b). Finally,
the trial court signed a separate interlocutory order that granted Dr. Willerson's
motion to dismiss based upon Texas Civil Practice and Remedies Code section
101.106. See Tex. Civ. Prac. & Rem. Code Ann. § 101.106 (Vernon 2005).

 The Poland parties appealed the adverse rulings dismissing all of their claims
against Drs. Ott, Willerson, and Grigore and Arthur S. Keats & Associates, and St.
Luke's Episcopal Hospital and the Texas Heart Institute appealed the denial of their
motion to dismiss--all under the same appellate cause number. Although the
interlocutory order appealed by St. Luke's Episcopal Hospital and the Texas Heart
Institute was permitted by statute, this was not true of every appealed order. See Tex.
Civ. Prac. & Rem. Code Ann. § 51.014(a) (Vernon 1997 & Supp. 2007). On
December 18, 2006, this Court, upon the parties' motion, abated the appeal and
remanded the cause for the trial court--upon various parties' motions, filed in the
trial court after appeal, to sever the interlocutory orders rendered in favor of Dr. Ott,
of Dr. Willerson, and of Dr. Grigore and Dr. Arthur S. Keats & Associates--to render
final and appealable those interlocutory rulings that had not been appealable on an
interlocutory basis. Upon remand, the trial court severed the rulings against the
specified defendants from the underlying cause, rendering a final judgment in the
newly severed cause numbers involving Dr. Ott, Dr. Willerson, and Dr. Grigore and
Dr. Arthur S. Keats & Associates. On March 15, 2007, this Court reinstated the
appeal, assigning different appellate cause numbers to the appeal of what had by then
become four separate rulings in four separate trial-court cause numbers. This opinion
and judgment concern the Poland parties' appeal of the dismissal order rendered in
favor of Dr. Grigore and Dr. Arthur S. Keats & Associates.



Service on Appellees


 In their first issue, the Poland parties argue that the trial court erred in granting
appellees' dismissal motion and dismissing their claims against Dr. Grigore with
prejudice because they first asserted claims against Dr. Grigore in an amended
petition that was filed fewer than 120 days before they served their expert report on
her (and Dr. Arthur S. Keats & Associates's) attorney. In their second issue, the
Poland parties assert that the trial court erred in dismissing their claims against Dr.
Arthur S. Keats & Associates because Dr. Arthur S. Keats & Associates waived any
objections to the Poland parties' expert report, including its timeliness, by not having
objected within 21 days of the report's (belated) service. Finally, the Poland parties
assert that the trial court erred, for various reasons, in awarding Dr. Grigore and Dr.
Arthur S. Keats & Associates $34, 373 in attorney's fees. (5)

 "We generally review rulings on a motion to dismiss under section 74.351(b)
for abuse of discretion." Univ. of Tex. Health Sci. Ctr. at Houston v. Gutierrez, 237
S.W.3d 869, 871 & 871 n.1 (Tex. App.--Houston [1st Dist.] 2007, pet. filed); accord
Intracare Hosp. N. v. Campbell, 222 S.W.3d 790, 794 (Tex. App.--Houston [1st
Dist.] 2007, no pet.). 

A. Dismissal of Claims Against Dr. Grigore

 The version of section 74.351(a) that applies to this case provides as follows
concerning service of the expert report and CV:

 § 74.351. Expert Report

 (a) In a health care liability claim, a claimant shall, not later than the
120th day after the date the claim was filed, serve on each party or the
party's attorney one or more expert reports, with a curriculum vitae of
each expert listed in the report for each physician or health care provider
against whom a liability claim is asserted. The date for serving the
report may be extended by written agreement of the affected parties. 
Each defendant physician or health care provider whose conduct is
implicated in a report must file and serve any objection to the
sufficiency of the report not later than the 21st day after the date it was
served, failing which all objections are waived.


See Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847,
875, amended by Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen.
Laws 1590, 1590. The statute continues:


 (b) If, as to a defendant physician or health care provider, an expert
report has not been served within the period specified by Subsection (a),
the court, on the motion of the affected physician or health care
provider, shall, subject to Subsection (c), enter an order that:


 (1) awards to the affected physician or health care provider
reasonable attorney's fees and costs of court incurred by the
physician or health care provider; and


 (2) dismisses the claim with respect to the physician or health
care provider, with prejudice to the refiling of the claim.

 

Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b).

 In their first issue, the Poland parties do not dispute that they did not serve Dr.
Grigore's counsel with their expert's report within 120 days of their first amended
petition's filing. Rather, they argue that the first amended petition did not allege
health-care-liability (or any) claims against Dr. Grigore (or against Dr. Arthur S.
Keats & Associates) and that they "for the first time" alleged that Dr. Grigore "was
directly and vicariously [sic] liable . . . for the surgery that lead [sic] to Jessie
Poland's death" in their second amended petition, which was filed on May 19, 2006,
fewer than 120 days before they served their expert report on appellees' counsel.

 The appellate record undisputedly refutes the Poland parties' factual
representations and argument. The first amended petition, filed on October 24, 2005,
alleged in pertinent part as follows:

 COME NOW Plaintiffs . . ., complaining of [various defendants
and] . . . Dr. Alina Grigore, Arthur S. Keats, M.D., Associates [sic], . . .,
who for cause of action, would respectfully show the following:


 II.



 

 This suit is brought under and by virtue of the law of the State of
Texas to recover those damages that Plaintiffs are justly entitled to
receive as compensation for the wrongful death of Jessie Poland which
was brought about directly and proximately by reason of the negligence
of the Defendants herein, as set out more fully hereinafter.


 . . .



III.



 Plaintiffs would show that Jessie Poland was under the care of
Drs. James Willerson and David Ott, who hospitalized Jessie Poland in
order to perform an elective medical procedure in August, 2003. While
Mrs. Poland had been taking Coumadin prior to her admission, the
Defendants herein were well aware of that fact and indeed, had her
check into the hospital sometime before the surgery was to take place to
monitor her chemical blood levels, knowing that it was dangerous and
risky to perform surgery on an individual who was prescribed this
particular drug. Nonetheless, despite Defendants' actual knowledge of
Mrs. Poland's anticoagulation levels as they existed on the morning of
the surgery, Drs. Willerson, and Ott, together with anesthesiologist Dr.
Alina Grigore, who was acting in the course and scope of her
employment, for Dr. Arthur Keats, M.D., Associates [sic], proceeded to
operate. Mrs. Poland's anticoagulation levels, resulting from the
prescribed Coumadin, were well known to these Defendants, as well as
to [various other defendants]. . . . All of the Defendants should have
prevented the surgical procedure from going forward with Mrs. Poland's
Coumadin and anticoagulation levels being what they were and the
Defendants were negligent in proceeding with the surgery under these
facts and circumstances.


 As a result of performing surgery on Mrs. Poland at the time of
her elevated Coumadin levels, she suffered a regrettably predictable
series of medical complications that ultimately led to her death on
August 20, 2003. The negligence of the Defendants in performing the
procedure constituted a proximate cause of the wrongful death of Jessie
Poland. 


IV.



 . . .


 WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that
the Defendants be duly cited to appear and answer herein, and that
Plaintiffs have judgment against Defendants, jointly and severally . . . .


(Emphasis added.) 

 Former section 74.351(a) requires that the report and CV be served not later
than the 120th day after the date that "the claim [is] filed." See Act of June 2, 2003,
78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875 (emphasis added),
amended by Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws
1590, 1590. In section 74.351, "claim" means "health care liability claim." Tex. Civ.
Prac. & Rem. Code Ann. § 74.351(r)(2) (Vernon Supp. 2007). "Health care liability
claim," in turn, is defined in chapter 74 as "a cause of action against a . . . physician
for the treatment, lack of treatment, or other claimed departure from accepted
standards of medical care . . . which proximately results in injury to or death of a
claimant, whether the claimant's claim or cause of action sounds in tort or contract." 
Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13) (Vernon 2005).

 The allegations in the first amended petition quoted above meet this definition
because they allege a cause of action (negligence) against appellees (and all
defendants) for the treatment of Jessie Poland, as well as their departure from the
accepted standards of medical care in that treatment, which proximately resulted in
Jessie Poland's death. The 120-day deadline to serve the expert report and CV on
appellees was thus triggered by the filing of the first amended petition that contained
the above allegations. See Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01,
2003 Tex. Gen. Laws 847, 875, amended by Act of May 18, 2005, 79th Leg., R.S.,
ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590; Poland v. Ott, No. 01-07-00199-CV,
slip op. at 12 (Tex. App.--Houston [1st Dist.] Jan. 31, 2008, no pet. h.) (holding that
filing of health-care-liability claim against particular defendant triggers start of 120-day period in which to serve former section 74.351(a) expert report and CV on that
defendant, regardless of whether report and CV were provided to defendant before
filing date). That petition was filed more than 120 days before the Poland parties
served the report and CV on either appellee. Accordingly, the trial court did not
abuse its discretion in dismissing with prejudice the claims against Dr. Grigore;
indeed, the statute required that the court do so. See Tex. Civ. Prac. & Rem. Code
Ann. § 74.351(b).

 The Poland parties nonetheless urge that they did not allege a health-care-liability claim against Dr. Grigore until their second amended petition because that
later petition contained, allegedly for the first time, "specific causes of action against
[Dr. Grigore], for direct and vicarious liability pre-operation." The gist of the Poland
parties' assertion appears to be that no health-care-liability claim was asserted against
Dr. Grigore (or either appellee) until more specific factual allegations were asserted
in the second amended petition. 

 We disagree. First, as demonstrated above, the first amended petition clearly
alleged a health-care-liability claim against Dr. Grigore (and both appellees). This
was all that was required for the 120-day expert-report deadline to start running
because the statute requires simply that each physician "against whom a [health-care-]liability claim is asserted" be served no later than 120 days after "the [health-care-liability] claim" is filed. See Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01,
2003 Tex. Gen. Laws 847, 875, amended by Act of May 18, 2005, 79th Leg., R.S.,
ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590. The statute does not tie the obligation
to serve the report and CV to the specificity of the allegations supporting the health-care-liability claim against a physician or health-care provider; that is, if the claim
asserted against such a defendant fits the definition of a health-care liability claim,
then the expert-report service obligation is triggered. Moreover, it is commonplace
to amend a petition's allegations against a particular defendant to render them more
specific as more facts become known about the complained-of occurrence. "[T]he
purposes behind former section 74.351(a)'s adoption were, among other things, to
remove unwarranted delay and expense, to accelerate the disposition of
non-meritorious cases, and to give hard-and-fast deadlines for the serving of expert
reports." Campbell, 222 S.W.3d at 797. The goal of creating hard-and-fast deadlines
for service of expert reports would be completely undermined if parties had to guess
how detailed the allegations in support of a health-care-liability claim had to be
before the service requirement was triggered. Neither the plain language of former
section 74.351(a), nor the legislative purpose behind it, supports such a reading. See
Gutierrez, 237 S.W.3d at 873 (providing, in construing former section 74.351(a), that
"[s]tatutes must be construed as written, and legislative intent determined, if possible,
from their express terms" and that "[e]ven if a statute is unambiguous, courts may
consider the statute's objective; circumstances of its enactment; its legislative history;
. . . [and] consequences of a particular construction . . . .").

 We hold that the trial court did not abuse its discretion in dismissing the Poland
parties' claims against Dr. Grigore. We thus overrule the Poland parties' first issue. (6)

B. Dismissal of Claims Against Dr. Arthur S. Keats & Associates

 The reasons set out above also demonstrate that the trial court did not abuse its
discretion is dismissing with prejudice the claims against Dr. Arthur S. Keats &
Associates. However, in their second issue, the Poland parties nonetheless argue that
the trial court abused its discretion in dismissing their claims against Dr. Arthur S.
Keats & Associates because this appellee waived any objection to the expert report
and CV by not having objected within 21 days of having been served with them.

 Former section 74.351(a) establishes the following procedure after an expert
report and CV have been served:

 Each defendant physician or health care provider whose conduct is
implicated in a report must file and serve any objection to the sufficiency
of the report not later than the 21st day after the date it was served,
failing which all objections are waived.


See Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847,
875 (emphasis added), amended by Act of May 18, 2005, 79th Leg., R.S., ch. 635,
§ 1, 2005 Tex. Gen. Laws 1590, 1590. The plain language of former section
74.351(a) provides that a defendant whose conduct is implicated in an expert report
need object only to the report's sufficiency within the 21-day period. 

 The term "sufficiency" as used in former section 74.351(a)'s 21-day-objection
deadline does not mean timeliness, as can be seen from other parts of section 74.351. 
For example, section 74.351(c) permits the trial court to allow the claimant a one-time
extension to cure the objected-to deficiency in the expert report. See Tex. Civ. Prac.
& Rem. Code Ann. § 74.351(c) (Vernon Supp. 2007) ("If an expert report has not
been served within the period specified by Subsection (a) because elements of the
report are found deficient, the court may grant one 30-day extension to the claimant
in order to cure the deficiency.") (emphasis added). Section 74.351(c) necessarily
establishes the procedure for challenges other than those based on belated
service--for instance, objections to deficiencies in the report's content--because
once a report is late, it remains late: no "cure" exists to render an untimely report
timely. See Herrera v. Seton Northwest Hosp., 212 S.W.3d 452, 460 (Tex.
App.--Austin 2006, no pet.) ("[S]ection 74.351(c) . . . permits [30-day] extensions
for expert reports that the court finds deficient in substance, not for reports that are
filed untimely."); Thoyakulathu v. Brennan, 192 S.W.3d 849, 853 (Tex.
App.--Texarkana 2006, no pet.) ("Section 74.351(c) applies only when 'an expert
report has not been served within' the 120-day period 'because elements of the report
have been found deficient.'" This clearly requires a timely-served report that is
deficient.") (emphasis in original; citation omitted; quoting Tex. Civ. Prac. & Rem.
Code Ann. § 74.351(c)). 

 Likewise, section 74.351(l) provides that the trial court "shall grant a motion
challenging the adequacy of an expert report only if it appears to the court, after
hearing, that the report does not represent an objective good faith effort to comply
with the definition of an expert report in Subsection (r)(6)." Tex. Civ. Prac. & Rem.
Code Ann. § 74.351(l) (Vernon Supp. 2007) (emphasis added). "[A] motion
challenging the adequacy of an expert report" (section 74.351(l)) is the equivalent of
an "objection to the sufficiency of the report" (section 74.351(a)). See, e.g., Random
House Webster's Unabridged Dict. at 24 (2nd ed. 2001) (providing that
"adequate" and "sufficient" are synonyms). Therefore, section 74.351(l)'s procedure
applies to former section 74.351(a)'s objection. That procedure refers to section
74.351(r)(6), which, in turn, defines an expert report in terms of its content. See Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(5)(6) (Vernon Supp. 2007). Accordingly,
the "objection to the sufficiency of the report" in former section 74.351(a) means an
objection to the report's substance, not to the timeliness of its service. Former section
74.351(a)'s 21-day deadline thus does not apply to an objection to an expert report
based on belated service.

 In contrast, section 74.351(b)--which establishes the consequences for failure
timely to serve an expert report--contains no deadline by which a defendant
physician or health-care provider may complain. See id. § 74.351(b). Dr. Arthur S.
Keats & Associates's complaint was that it was not timely served any report at all, not
that a timely served report was deficient. This kind of complaint is not subject to the
21-day-objection deadline of former section 74.351(a). (7)

 We hold that the trial court did not abuse its discretion in dismissing the Poland
parties' claims against Dr. Arthur S. Keats & Associates. We thus overrule this
portion of the Poland parties' second issue. (8)

Award of Attorney's Fees to Appellees


 Under their second issue, the Poland parties argue that the trial court erred in
awarding $34,373 in attorney's fees to appellees because

 [t]here has been no hearing on attorney [sic] fees. [The Poland parties]
were denied the opportunity to cross-examine [appellees] on attorney fee
[sic]. The attorney fees for both Dr. Alina Grigore and Dr. Arthur S.
Keats & Associates are one combined figure, not detailing any particular
amount for either. Appellees have failed to meet the standard as set
forth above,[ (9)] which must be adhered to, in their requests for attorney
fees.


 The record shows the following. In their June 29, 2006 joint motion to dismiss
and objection to the Poland parties' second amended petition, appellees requested
attorney's fees totaling $34,373 for Dr. Grigore and Dr. Arthur S. Keats & Associates
together. No affidavit was attached to the motion in support of the requested fees. 
The hearing on appellees' June 29 joint motion occurred on July 14, 2006. At that
hearing, counsel for appellees expressly asked for attorney's fees under section
74.351, though no amount was mentioned. See Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351(b)(1) (requiring trial court to award "to the affected physician or health care
provider reasonable attorney's fees and costs of court incurred by the physician or
health care provider" when court grants dismissal motion based on claimant's failure
timely to file expert report). It appears, however, that an affidavit supporting "costs"
was tendered to the court at that hearing:

 Counsel for appellees: I would also--I failed to file the affidavit for
costs. If I may file that with the Court. . . .


 On August 16, 2006, while their June 29 joint motion was pending and more
than a month before the court would rule on it, appellees filed another joint motion
that raised the same arguments and requested the same relief as the as the June 29
joint motion had. The August 16 joint motion again requested $34,373 in attorney's
fees for Dr. Grigore and Dr. Arthur S. Keats & Associates together, but this time
attached the affidavit of their trial counsel, Dale Burrus Frisby, in support:

 Attorney [sic] fees incurred by Kroger, Myers, Frisby & Hirsch during
the course of responding to Plaintiff's [sic] Petition . . . are . . . on behalf
of Dr. Alina Grigore and Arthur S. Keats & Associates [sic], the amount
of $34,373.00.


That affidavit was dated July 14, 2006, the same date as the hearing on appellees'
June 29 joint motion to dismiss; it is unclear whether this affidavit was a copy of the
affidavit for "costs" to which appellees' counsel referred and that he tendered at the
July 14 hearing. The trial court signed the order granting appellees' motion to
dismiss, which also awarded appellees their attorney's fees, on October 30, 2006.

 First, the Poland parties have provided absolutely no briefing or argument to
support the following appellate challenges concerning attorney's fees: "[t]here has
been no hearing on attorney [sic] fees. [The Poland parties] were denied the
opportunity to cross-examine [appellees] on attorney [sic] fee. The attorney fees for
both Dr. Alina Grigore and Dr. Arthur S. Keats & Associates [sic] are one combined
figure, not detailing any particular amount for either." We decline to consider these
challenges because they are inadequately briefed. See Tex. R. App. P. 38.1(h);
Stephens v. Dolcefino, 126 S.W.3d 120, 130 (Tex. App.--Houston [1st Dist.] 2003),
pet. denied, 181 S.W.3d 741 (Tex. 2005).

 Additionally, the Poland parties did not object below to the attorney's fees
award on any of the grounds asserted on appeal--either during the July 14 hearing,
when appellees' counsel appears to have tendered an affidavit of "costs"; during the
month and a half between the time that appellees' filed their August 16 joint motion,
which attached the complained-of affidavit, and the court signed the dismissal order
that awarded fees; or after that order was rendered. These types of challenges must
be preserved to be asserted on appeal. See Tex. R. App. P. 33.1(a)(1); City of San
Antonio v. Longoria, 04-04-00063-CV, 2004 WL 2098074, at *4 (Tex. App.--San
Antonio Sept. 22, 2004, no pet.) (memo. op.) (holding that following complaints
concerning attorney's fees were waived for not having been raised in trial court: "the
affiants did not state they are licensed attorneys in good standing in the State of
Texas; no evidence was presented regarding their reputation, experience, or abilities;
a foundation for the affiants to testify on the reasonableness of their fees was not
established; and there is no evidence the fees are reasonable in Bexar County, Texas
or that two attorneys were necessary at an arbitration."). 

 We overrule this portion of the Poland parties' second issue.

Conclusion


 We affirm the judgment of the trial court.

 We deny appellees' request for sanctions on appeal.


 Tim Taft

 Justice


Panel consists of Justices Taft, Keyes, and Alcala.
1. See Tex. Bus. & Com. Code Ann. §§ 17.41-.63 (Vernon 2002 & Supp. 2007).
2. Before Dr. Arthur S. Keats & Associates had answered or appeared in the suit,
Dr. Grigore had separately twice moved to dismiss the claims against her for
untimely service of an expert report. She and Dr. Arthur S. Keats & Associates
then filed a joint motion to dismiss the claims against them on June 29, 2005,
which predated the dismissal hearing. After the dismissal hearing, but before
the trial court had ruled on their June 29 joint dismissal motion, appellees filed
another joint dismissal motion on the same grounds. For simplicity's sake,
unless it is otherwise necessary to distinguish between appellees' pre-hearing
and post-hearing dismissal motions, we refer simply to appellees' "motion" to
dismiss.
3. This first unsigned report of Dr. Moritz was dated May 2, 2005.
4. The Poland parties also served a report of a nurse, Rachel Cartwright, on at
least some of the defendants in their lawsuit in May 2006. The trial court
struck the May 2006 expert report of Cartwright for its having been untimely
served. The Poland parties do not complain in this appeal of the striking of
Cartwright's report.
5. The trial court dismissed all of the Poland parties' claims against Dr. Grigore
and Dr. Arthur S. Keats & Associates, even those couched as something other
than health-care-liability claims. However, the Poland parties do not complain
on appeal of the dismissal of these additional claims. We thus do not consider
whether the trial court properly dismissed the claims couched as anything other
than health-care-liability claims.
6. We distinguish Puls v. Columbia Hospital at Medical City Dallas Subsidiary,
L.P., on which the Poland parties rely. See 92 S.W.3d 613 (Tex. App.--Dallas
2002, pet. denied). In Puls, the plaintiff filed a claim based on a perfusionist's
negligence, for which it alleged that the hospital-employer was vicariously
liable, in its original petition; in an amended petition, the plaintiff added claims
based on nurses' negligence, for which it also alleged that the hospital-employer was vicariously liable. See id. at 615. The expert report concerning
the nurses' negligence was served within 180 days of the amended petition's
filing (the deadline at that time), but more than 180 days from the original
petition's filing. See id. The perfusionist was nonsuited. See id. The Puls
court rejected the hospital's contention that the expert report concerning the
nurses' actions was untimely because it had been served more than 180 days
from the filing of the original petition, in which the hospital had first been
made a party through vicarious liability for another employee's actions: the
claim against it for vicarious liability based on different employees' actions
was a new "claim." See id. at 617-18. Here, in contrast, the Poland parties
actually alleged health-care-liability claims against each appellee in their first
amended petition, simply embellishing those claims in later amendments.
7. See Ogletree v. Matthews, No. 06-0502, 2007 WL 4216606, at *4-5 (Tex.
Nov. 30, 2007) (appearing implicitly to accept petitioner's position that total
failure to serve expert report would not require defendant's objection within
21-day window, although rejecting petitioner's complaint that insufficient
report was, in effect, no report at all and thus holding that petitioner had
waived objections thereto); Francis v. Select Specialty Hosp., No. 01-04-01186-CV, 2005 WL 2989489, at *3 (Tex. App.--Houston [1st Dist.] Nov.
3, 2005, no pet.) (memo. op.) ("[B]ecause there is no evidence in the record
that Sharon filed her expert report with the trial court or otherwise provided
Select Specialty with an expert report, the 21-day deadline by which a health
care provider must file and serve its objections to the sufficiency of such a
report was not triggered."); Smith v. Hamilton, No. 09-07-128-CV, 2007 WL
1793754, at *4 (Tex. App.--Beaumont June 21, 2007, no pet.) (memo. op.)
("[A] health care defendant's 21-day deadline explicitly refers to an 'objection
to the sufficiency' of an expert report, not to the fact that an expert report was
not served within the mandatory 120-day deadline.") (memo. op.); see also
Empowerment Options, Inc. v. Easley, No. 09-06-148-CV, 2006 WL 3239527,
at *4 (Tex. App.--Beaumont Nov. 9, 2006, pet. denied) (memo. op.) (noting
in dictum that "[c]hapter 74 imposes no deadline for filing a motion to dismiss"
for failure timely to serve an expert report); Packard v. Miller, No. 07-06-0454-CV, 2007 WL 1662279, at *2 (Tex. App.--Amarillo, May 31, 2007, pet.
denied) (memo. op.) (holding that defendant who waited almost 18 months to
move to dismiss health-care-liability claim asserted against him for failure
timely to serve expert report was not equitably estopped from seeking
dismissal because "[t]he Legislature did not include an explicit deadline for the
filing of a motion to dismiss" under section 74.351); cf. Pena v. Methodist
Healthcare Sys. of San Antonio, Ltd., 220 S.W.3d 52, 53-54 (Tex. App.--San
Antonio 2006, no pet.) (holding that section 74.351(a)'s 21-day objection
deadline did not apply to timely served expert report that was unaccompanied
by CV because failure timely to serve CV rendered service of entire report
untimely).
8. Given our disposition, we need not determine if the trial court properly
dismissed the Poland parties' claims against Dr. Arthur S. Keats & Associates
because the claims against it were based on respondeat superior for Dr.
Grigore's actions and Dr. Grigore was properly dismissed for failure timely to
serve an expert report.
9. The Poland parties rely on Texas Disciplinary Rule of Professional Conduct
1.04(b), which establishes factors that may be considered in determining a
fee's reasonableness, and on the opinion of the El Paso Court of Appeals in
Marquez v. Providence Memorial Hospital, in which the court adopted the
factors of rule 1.04. See Tex. Disciplinary R. Prof'l Conduct 1.04(b),
reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (Vernon 2005)
(State Bar R., art. X, § 9); Marquez v. Providence Mem'l Hosp., 57 S.W.3d
585, 596 (Tex. App.--El Paso 2001, pet. denied).